|     |     |
| --- | --- |
| 115 | 191 |
| 117 | 137 |
| 117 | 451 |

LARSON, by guardian *ad litem,* Appellant, vs. PEDERSON and wife, Respondents.

*September 2 — September 23, 1902.*

*Deeds: Forgery of signature: Evidence: Court and jury.*

In ejectment it is *held* upon the evidence (stated in the opinion) that the question whether plaintiff's ancestor signed a deed purporting to have been executed by him, under which defend-ants.claim title, should have been submitted to the jury.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action of ejectment, commenced February 28, 1900, to recover possession of the undivided one-half of eighty acres of land, described, to which the plaintiff claims title by descent from her father, Christian Larson, who died in Chicago, February 14, 1895. The defendants claim title through the record of a deed purporting to have been executed by Christian Larson and wife, and his cotenant, Carl Larson, January 29, 1894, which deed the plaintiff claims to be a forgery so far as it purports to have been executed by Chris-tian Larson. Issue being joined, and trial had, at the close of the trial the court directed a verdict in favor of the defend-ants, and from the judgment entered thereon the plaintiff appeals.

The important question in the case is whether the evidence on the part of the plaintiff was sufficient to take the case to the jury on the ground that the alleged deed of January 29, 1894, was a forgery, so far as it purported to be executed by Christian Larson. The evidence on the part of the plaintiff is undisputed, and is to the effect that April 11, 1893, one Albert Larson, having title and possession to the eighty acres of land in question, on that day conveyed the same to his cousins, Christian and Carl Larson; that they all then lived in Chicago; that August 9, 1893, Christian Larson married

the mother of the plaintiff; that about the same time Chris-
tian and Carl Larson went from Chicago to northern Wis-
consin and Michigan to work, and remained there until in
April or May, 1894; that January 22, 1894, they were paid
off at Navarino; that they went from there to Sturgeon Bay
on or about February 7, 1894, where they remained until the
latter part of the following April, and were employed in build-
ing a boat for themselves, after which time they returned to
Chicago; that from December 23, 1893, to February 22, 1894,
Christian's wife, mother of the plaintiff, was continuously in
the hospital in Chicago; that February 4, 1894, the plaintiff
was born while her mother was so in the hospital; that about
the 1st of May, 1894, Christian and Carl returned from
northern Wisconsin to Chicago, and went down the Missis-
sippi together to work, where they remained until about
February 1, 1895, when Christian returned to Chicago, sick;
that he died February 14, 1895, in Chicago; that up to that
time Christian and Carl claimed title and possession of the
land in question, and paid the taxes thereon; that in May,
1895, the deed of January 29, 1894, is said to have turned
up, purporting to be executed on that day by Christian Larson
and wife and Carl Larson, before one Christ. Larson, a notary
public in Chicago. Carl Larson testified to the effect that he
signed the deed about April 14, 1895, being two months after
the death of Christian, and that he and Christian never went
together to sign the deed; that they were not in Chicago
January 29, 1894; and, among other things, he testified:
"That deed that I signed was not signed by Christian Larson,
my brother. I am sure Christian Larson, my brother, never
signed the deed I signed." Christiana Larson, mother of the
plaintiff, testified to the effect that she never saw Christ. Lar-
son, the notary, until some time in 1897 or 1898; that Albert
Larson told her to go to the notary's office, and sign some
papers; that she went and signed the paper, but that she did
not know what she signed, and there was no one else in the

office at the time except the notary; that that was the only time she had ever seen the notary, Christ. Larson, and that she never was in his office but that one time; that she was in the hospital from December 22, 1893, until February 22, 1894, never leaving there once during that time.

Christ. Larson, the notary, testified to the effect that he remembered taking the acknowledgment of the deed of January 29, 1894; that he could not tell when he took such acknowledgment, nor where he took it; that to his recollection the acknowledgment was not taken together; that he was not sure whether Carl Larson was in Chicago January 29, 1894; that January 29, 1894, either Christian Larson or his wife, Christiana, appeared before him, but that he did not know which one it was; that they came separately; that, after the deed was acknowledged and recorded, he did not know what happened to it; that he guessed Albert Larson got it; that he did not remember seeing any money change hands; that he had not seen the deed since the acknowledgment was taken. Albert Larson testified to the effect that he did not have the deed in his possession; that he had made search among his papers, and could not find it; that he received the deed from the register of deeds of Shawano county; that it was hard to say what had become of it; that he was formerly in the insurance business in Chicago, and had an office there, which is still standing; that he did not examine his papers in this office for the deed, as he did not keep his papers in that office; that he did not remember how long he had that deed in his possession. Matthias Matthison, a son-in-law of the defendants, and who claims to have acted as the agent of the defendants in the purchase of the land in question, testified to the effect that he had made a search among his papers for the deed, but was unable to find it; that he did not know for certain whether he ever had the deed in his possession; that he had several papers in his possession, but he did not know whether the deed was

among them or not; that he turned these papers over to *Pederson,* and, if the deed was among them, it was delivered to *Pederson.* Defendant *Pederson* testified that when he got his deed from Albert Larson he did not get a deed from Christian Larson and wife and Carl Larson to Albert Larson.

For the appellant there was a brief by *Wallrich, Dillett & Eberlein,* and oral argument by *C. F. Dillett.*

For the respondents there was a brief by *Bouck & Hilton,* and oral argument by *John F. Klevin.*

CASSODAY, C. J. The vital point to be determined is whether the evidence was sufficient to take the case to the jury on the question whether Christian Larson executed the deed of January 29, 1894. The rule is well established that, to set aside a deed, duly witnessed and acknowledged, the evidence must be clear, satisfactory, and convincing beyond all reasonable controversy. *Linde v. Gudden,* 109 Wis. 326, 328, 85 N. W. 323, and cases there cited. The defendants were notified to produce the deed in question upon the trial, but they failed to do so. Its absence was not very satisfactorily accounted for, as indicated in the statement of facts. The defendants rely upon the record of the deed, made about sixteen months after the alleged execution of the deed. The difficulty of proving that the signature to a deed, not produced so that the same may be inspected, is a forgery, is very obvious. Such difficulty is increased where, as here, there are no witnesses nor witness to such execution. True, it appears from the evidence that the deed was "executed and acknowledged according to the laws" of Illinois, before a notary public, who certified that it was so executed and acknowledged, and hence, under our statutes, it was entitled to record. Stats. 1898, secs. 2218, 2219, 2232. Being entitled to record, the record thereof was admissible in evidence, subject to "be rebutted by other competent evidence." Sec. 4156. But in the absence of the original, such record, without witnesses or

witness, leaves the conveyance supported only by the presump-
tions of the truthfulness of the certificate of acknowledg-
ment, and the testimony of the notary public taking the same
in support of it. The certificate of the notary declares that
Christian Larson and his wife and brother, Carl, "personally
appeared before" him on January 29, 1894. It conclusively
appears from the evidence that the certificate in that respect
is false. The trial court conceded that there was "consider-
able testimony to the effect . . . that it was impossible
for him [Christian Larson] to have been in the city of Chi-
cago on the 29th of January, 1894," and that the "circum-
stances" were "very suspicious." The ruling of that court
was based upon the theory that the certificate of the notary
was false, so far as the date was concerned, but that it was
possible that Christian Larson signed the deed at some other
time. A summary of the testimony of the notary is given in
the statement of facts; and it is, to say the least, very un-
satisfactory. It is undisputed that at the time it is claimed
that the deed was executed Christian and his brother, Carl,
were both in northern Wisconsin, where they remained three
months after such alleged execution; and that the plaintiff's
mother was in the hospital, where she had been for more than
a month, and where she continued to remain for nearly a
month afterwards, and where the plaintiff was born, February
4, 1894. According to her testimony, some time after her
husband was dead, she, at the request of Albert, "signed on a
piece of empty paper," in the presence of the notary, who said
she would not thereby sign away anything, and that Albert
would give her some money, and that she never signed with
her husband. Carl testified that he signed the deed two
months after the death of Christian, and that that deed was
not signed by Christian, and that Christian never signed the
deed that he did. That testimony seems to be undisputed,
except by the notary, as stated. The fact that the deed was
not recorded until four days after Carl claims to have signed

it, and more than two months after Christian's death, and nearly sixteen months after it is certified to have been executed, would seem to corroborate the claim of the plaintiff. We must hold that the evidence was sufficient to take the case to the jury.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.