Haynes, Appellant, vs. Harriman and others, Respondents.

*December 19, 1902—March 21, 1903.*

(1, 2) *Deeds: Setting aside: Fraud and undue influence: Evidence.*
(3)˙ *Trial: Continuance.*

1. In an action to set aside, on the ground of fraud and undue influence, a conveyance of lands by an aged woman to her granddaughter (since deceased) who had lived with her until married, whom she had loved and treated as her own child, in whose favor she had made a will, and who gave back a bond and mortgage to secure payment of a certain sum monthly to the grantor during life, the facts shown by the evidence are held not to warrant a presumption of fraud and undue influence, but to sustain findings to the effect that there was no undue influence and no fraud and that the contract was the free act and deed of the plaintiff, understandingly and deliberately executed.

2. The fact that the granddaughter unexpectedly died before the grantor and that the latter then discovered that she had not disposed of her property as she would have done had she anticipated such a contingency, is not a ground for setting aside the conveyance.

3. Refusal to grant a continuance, near the close of a trial by the court, in order to take a supplemental deposition of plaintiff (who was ill) upon certain points, the court stating that the proposed testimony would be of no use—is *held* not error.

Appeal from a judgment of the circuit court for Winnebago county: George W. Burnell, Circuit Judge. *Affirmed.*

This action was commenced October 25, 1899, to set aside a deed of conveyance of lands therein described, and executed March 30, 1898, by the plaintiff to one Ida E. Harriman, since deceased, on the ground that such execution was procured by fraud and undue influence, while the plaintiff was ignorant of the nature and contents of the paper, and also to discover and adjudge to the plaintiff $400 in money alleged to belong to the plaintiff, and left in the care and the custody of said Ida, and for an injunction.

The complaint, among other things, alleges that said Ida died intestate March 21, 1899, leaving, her surviving, two minor children (the defendant *Fred Eugene Harriman,* eleven years of age, and the defendant *Roy Marshall Harriman,* nine years of age) and her husband, the defendant *Fred E. Harriman,* who was appointed administrator of her estate August 1, 1899; that Ida was born November 21, 1865, and was the granddaughter of the plaintiff; that soon after Ida's birth she was left by her mother, Alice E. Herrick, of Rockford, Illinois, in the care of the plaintiff, who reared and educated her and made a home for her until she was married to the defendant *Fred E. Harriman,* November 3, 1886; that the plaintiff loved Ida, and treated her as her own child, and that between them there had always existed great love, esteem, and confidence for and in each other; that for ten years the plaintiff had been a widow, living alone, and cared for and managed her property and business; that the plaintiff executed her last will and testament, with Frank W. Harriman and Mary E. Cooley as subscribing witnesses, bearing date March 25, 1898, wherein she stated that she was seventy-two years of age, and of sound mind and memory; that in and by the last will she gave and bequeathed to her daughter Alice E. Herrick $1, and to each of her other grandchildren (Edith H. Allen, Jessie E. Becker, and Frank H. Robinson) $1, and all of the rest and residue of the remainder of her estate both real and personal of every name and nature she therein gave, bequeathed and devised to her granddaughter Ida aforesaid, to have and to hold to herself, her heirs, executors, administrators, and assigns, forever, and thereby appointed the said Ida as the sole executrix thereof, and waived the giving of any bond by her; that such will is in evidence as Exhibit A; that the plaintiff executed a warranty deed of all of her real estate to the said Ida, bearing date March 30, 1898, subject to a mortgage of $300, and in which deed the plaintiff reserved "to herself the sole use,

income, and benefit of said above described real estate for and during the period of her natural life;" that such deed is in evidence as Exhibit B, and F. W. Harriman and Clara Claasen are named as the subscribing witnesses thereto; that said Ida executed a bond to the plaintiff, bearing date March 30, 1898, in the penal sum of $5,000, conditioned to the effect that if the said Ida, her heirs, executors, or administrators, should well and truly pay the taxes, interest, and insurance premiums upon the real estate described for and during the lifetime of the plaintiff, and pay to the plaintiff, for and during her lifetime, $10 per month (provided, however, that the income derived from the rent of the premises above described, not occupied by the plaintiff personally for her home, should be deducted from said payments of $10 per month), and at the death of the plaintiff should give her a decent burial and pay the expenses thereof, all without fraud or delay, then such obligation was to be void, otherwise to be and remain in full force; that such bond is in evidence as Exhibit C, and F. W. Harriman and Clara Claasen are named as subscribing witnesses to the same; that, to secure the conditions named in the bond, the said Ida gave back to the plaintiff a mortgage upon all of the premises so conveyed to her, bearing the same date, and having the same subscribing witnesses, and marked "Exhibit D."

To such complaint the defendant *Fred E. Harriman* put in three separate answers,—one for himself personally, one as guardian for such minor heirs, and the other as the administrator of the estate of said Ida,—each of which answers consisted of admissions, denials, and counter allegations.

At the close of the trial the court found, as matters of fact, that the plaintiff executed and delivered to Ida the will, Exhibit A, and the warranty deed, Exhibit B, on the days they respectively bear date; that, at the time the plaintiff so executed and delivered said instruments, she understood the nature of the contract in and by said papers represented, and

understood the contents and nature of each and all of the papers and said contract; that the said Ida, at the time of the execution and delivery by the plaintiff of Exhibit B, executed and delivered to the plaintiff Exhibit C, being the bond mentioned, and also Exhibit D, being the mortgage to secure such bond, and that the plaintiff accepted said last-named papers, Exhibits C and D, understanding and knowing the contents and nature thereof; that the execution and delivery of Exhibit B by the plaintiff to Ida, and the execution and delivery of Exhibits C and D by Ida to the plaintiff, constitute one contract, and said contract was instituted and brought about at the request and by and under the direction of the plaintiff, and no undue influence was used by any one with respect to plaintiff, nor was there any fraud, deception, or conspiracy of any kind practiced by any one with reference to said contract; that the said contract was the free act and deed, understandingly, deliberately, and intentionally made by the plaintiff; that, immediately upon and after the execution and delivery of said papers constituting said contract, the said Ida commenced to carry out and fulfill the obligations thereby imposed upon her, and from thence on until her death did carry out and fulfill each and all the obligations in and by said contract imposed upon her, and during all of said time the plaintiff accepted and received from Ida, and used to her own advantage, all the benefits secured to her under and by virtue of said contract; that since the death of Ida the defendants, by and through the administrator of the estate of Ida, have fully carried out and performed on their part the conditions of said contract so far as the plaintiff would permit the same to be done, and have always been, and are still, ready and willing to fully perform all the obligations of said contract with relation to the plaintiff; that each and all the material allegations of the several answers of the defendants in this action are sustained by the proofs; that the allegations of the complaint, so far as they tend to invalidate said con-

tract, are not sustained by the proofs. And the court found, as conclusions of law, that the defendants are entitled to judgment dismissing the complaint on the merits, and ordered judgment to be entered accordingly. From the judgment so entered the plaintiff appeals.

*Wesley Mott,* for the appellant.

*Humphrey Pierce,* for the respondents.

The following opinion was filed January 13, 1903:

CASSODAY, C. J. The principal question presented is one of fact. That fact was resolved by the trial court in favor of the defendants and against the plaintiff. The important question is whether such finding is against the clear preponderance of the evidence. To appreciate the evidence, it is necessary to consider the relations of the parties, and the circumstances prior to and attending the transaction. There are certain conceded facts which have a bearing upon the character of the transaction. The plaintiff was seventy-two years of age at the time of executing the papers in question. Thirty-three years prior to that time, she had taken her granddaughter Ida, then an infant, into her care and custody and home, and reared and educated her and loved and treated Ida as her own child, until she married the defendant *Fred E. Harriman,* November 3, 1886, a few days before Ida became twenty-one years of age. Thereupon Ida left the home of the plaintiff at Neenah, where she had lived most of her life, and went to and lived with her husband, and continued to live with him and her children down to the time of her death, March 21, 1899. After the marriage of Ida, November 3, 1886, the plaintiff continued to reside with her husband at Neenah, until he died, in May, 1889. Then she continued to live as a widow at her home in Neenah thereafter, while Ida lived with her husband and children at Appleton. The plaintiff testified, among other things, to the effect that she took care of her business from the time of her

husband's death until she went to Appleton and put it into the hands of Ida, in March, 1898; that up to that time Ida did no business for her; that it was her intention that Ida should have what was left of her property after her death; that her first visit to Appleton on that business was March 30, 1898; that she could not say that she was there before the same month or week; that she had talked the matter over with Ida before she went to Appleton; that she went there partly to see Ida, and partly to provide that Ida should have her property when she got through with it; that she remembered signing the will, and knew its contents; that she took some of her title deeds from Neenah to Appleton about March 30, 1898; that she could not say whether she took them there before or after the will was drawn; that she could write, and read writing; that she saw Ida sign the bond and mortgage, and took them home with her to Neenah; that she did not knowingly sign the deed to Ida; that the signature looked like hers, but that she did not know whether it was her signature or not. The plaintiff also testified as to her understanding of the oral agreement made at the time the papers were drawn, which differs in some respects from the transaction as evidenced by the deed to Ida and the bond and mortgage back, and is entirely inconsistent with her claim that she only intended to execute a will. According to her own testimony, she went to Appleton to put her business in the hands of Ida, and she took back home to Neenah with her the bond and mortgage executed by Ida, which was necessarily based upon the deed to Ida from the plaintiff. That deed was regularly witnessed, acknowledged, and recorded. To set aside such a deed, the evidence must be clear, satisfactory, and convincing, beyond all reasonable controversy. *Linde v. Gudden,* 109 Wis. 326, 328, 85 N. W. 323; *Larson v. Pederson,* 115 Wis. 191, 91 N. W. 659, 660. As stated by the trial court, from the plaintiff's own testimony it is fairly apparent that she did sign the deed; that the ques-

tions put to her were extremely leading, but that she refused anywhere to deny that the signature to the deed was her own; that upon her own testimony the court would be compelled to find that she did sign the deed.

2. Counsel for the plaintiff contends that, if the plaintiff did sign the deed, her signature was obtained through fraud, and upon this point he seems to place his greatest reliance. In the language of the trial court:

"No claim is made, and there is no evidence to show, that any trick or subterfuge was resorted to to induce her to sign the deed. She admits executing the will. She did sign the deed. She claims, however, that both were signed at the same time, although there is a difference of five days in the dates of the two; and Frank W. Harriman, the scrivener, testifies that they were respectively executed at the time they bear date."

It is a significant fact that Mary E. Cooley, an old acquaintance of the plaintiff, and who lived within a block of Ida, was sent for to witness the will. If the deed and bond and mortgage had been executed at the same time, it is quite obvious that they, also, would have been witnessed by Mrs. Cooley, instead of the hired girl, as they were. The witness Frank W. Harriman, who drew and witnessed the papers, testified to the effect that he drew the will and that it was executed by the plaintiff March 25, 1898; that the plaintiff at that time wanted him to draw a contract and agreement substantially as evidenced by the deed to Ida and the bond and mortgage back, but that he could not do it then, because she did not have her title deeds with her; that March 30, 1898, the plaintiff was at Appleton again, when, at her request, he drew the deed from her to Ida, and read it over to her, and explained the contents to her before she signed it, and carefully called her attention to the reservation clause in it; that he also read to her the bond and mortgage, and that the papers were all executed at the same time,—March 30,

1898,—and witnessed by himself and the hired girl. That the plaintiff knew that she had previously conveyed her property to Ida is manifest from the fact that September 17, 1898, she joined with Ida in conveying one of the lots to Louis Nelson in consideration of $900, out of which sum Ida paid the mortgage, mentioned, on the premises, and taxes and insurance thereon, and some for the personal needs of the plaintiff; that the balance of $400 Ida retained as her absolute property; and that such $400 is the same mentioned in the complaint in this action. The evidence in support of the findings of the trial court is clear and convincing.

3. Counsel for the plaintiff insists that the facts warrant the presumption that the deed to Ida was procured by fraud and undue influence. In support of such contention he seems to rely upon *Worrall's Appeal,* 110 Pa. St. 349, 364, 365, 1 Atl. 380, 765, and *Davis v. Dean,* 66 Wis. 100, 26 N. W. 737; but the facts in each of those cases distinguish it broadly from the case at bar. In the Pennsylvania case cited, a young man, usually in poor health, just after becoming of age, when so ill that it was not believed he would recover, conveyed the greater part of his property, of the value of $13,000, for the nominal consideration of $15, to a woman who had been a member of the same household from his infancy, and who had nursed him in infancy and sickness, and instructed him when young, and managed his property, and in whom he confided as a mother. That is an extreme case, but it was there said:

"There is nothing in the relation of parent and child, or other near relation, to preclude one from accepting a benefit from the other, in the shape of a gift or of a contract, upon more advantageous terms than would have been granted to a stranger; and the fact that such a gift has been conferred, or contract made, will not warrant an inference that it has been procured by undue influence. Unless there is something suspicious in the circumstances, or the nature and amount of the

gift is such that it ought not to have been accepted even if freely tendered, the donee will not be called upon to show that the transaction was in all respects fair and honest, and in no respect tainted by fraud or undue influence."

In that case it was held that there were suspicious circumstances, as well as a mere nominal consideration. In a later case in that court it was held that:

"Where a contract between a mother and son is on its face fair, reasonable, and conscionable, it may be enforced without proof that it was fully explained to the mother before she signed it, or that independent advice was obtained regarding it. It is the parental influence of the parent over the child, and not of the child over the parent, that requires the watchful care of the court." *Clark v. Clark,* 174 Pa. St. 309, 34 Atl. 610, 619.

See *Oberly v. Oberly,* 190 Pa. St. 341, 42 Atl. 1105. In a still later case in that state it is held that:

"Business dealings between parents and children and other near relatives are not *per se* fraudulent. They must be treated just as are the transactions between ordinary debtors and creditors, and where the *bona fides* of their transactions is attacked the fraud must be clearly proved." *In re Coleman's Estate,* 193 Pa. St. 605, 44 Atl. 1085.

In a still later case in the same court "a gift of bonds to a church by an elderly woman, in her sound senses, for the consideration of the payment of interest to her on the bonds during her life and a covenant to keep in repair her cemetery lot," was sustained upon the evidence in the case. *Longenecker v. Zion E. L. Ch.* 200 Pa. St. 567, 50 Atl. 244.

Every such case must necessarily turn upon its facts. The case of *Davis v. Dean, supra,* is so dissimilar in its facts from the case at bar that it is difficult to perceive why it should be cited. The same might be said of other cases in this court which have followed that case. *Disch v. Timm,* 101 Wis. 179, 191, 192, 77 N. W. 196. For cases more similar to the case at bar in their facts, see *Cutler v. Cutler,* 103 Wis. 258, 264, 79 N. W. 240; *Fox v. Martin,* 104 Wis. 581, 80 N. W.

921; *Deck v. Deck,* 106 Wis. 470, 82 N. W. 293. Here the clear preponderance of the evidence and some of the admitted facts repel every suggestion of want of capacity, secrecy, fraud, or undue influence, or any attempt to divert the property from going where it was ultimately designed to go. The plaintiff went from Neenah to Appleton to put her business and property in the hands of Ida, and the papers were drawn to make that purpose effectual. No question was made as to the good faith of the transaction during the life of Ida, which continued for about a year after the papers were executed. Had Ida continued to live, and had she survived the plaintiff, there is no probability that any controversy would ever have arisen. But unexpectedly to the plaintiff and all others, Ida died first. Then the plaintiff manifestly discovered that she had not fixed her property as she would have done had she anticipated such a contingency. But that is no ground for setting aside the transaction.

4. Error is assigned because near the close of the trial the court refused to grant a continuance in order to take a supplemental deposition of the plaintiff, who was sick at the time, in respect to a mistake in her original examination in regard to an insurance policy, and also to rebut a specific statement of the witness Frank W. Harriman as to communications he made to the plaintiff at the time of drawing the papers. . In denying the application, the court said: "If it would help you in the least, the court would grant the motion for a continuance, but I don't see that it would be of any earthly use to you." We perceive no error in such ruling.

*By the Court.*—The judgment of the circuit court is affirmed.

Upon a motion for a rehearing there was a brief by *Wesley Mott,* for the appellant, and a brief by *Humphrey Pierce* and *A. M. Spencer,* for the respondents.

The motion was denied March 21, 1903.