## Hawthorne, *et al. v.* Jenkins, *et al.*

### Bill to Annul a Deed.

(Decided May 15, 1913. Rehearing denied June 19, 1913.
62 South. 505.)

1. *Parent and Child; Transactions Between; Undue Influence.*— In transactions between a parent and child, the presumption is that the parent dominates, and is free from undue influence, thus casting the burden on one seeking to show undue influence of the child to overcome such presumption.

2. *Deeds; Undue Influence; Parent and Child.*—Where a parent is aged, infirm or otherwise dependent upon a child so as to place the child in a controlling position, the question of undue influence by the child in procuring a deed is one of fact, as there is no presumption that the deed is invalid because of undue influence; hence, one asserting it has the burden of showing it.

3. *Same.*—That a father was old and suffering from physical infirmities, sickness or mental distress, when he conveyed land to his son, would not of itself raise a presumption that the deed was procured by undue influence, or that the grantor was mentally incompetent.

4. *Same; Evidence.*—The fact that a parent and child resided together when the parent executed a deed to such child which excluded other children from sharing in the parent's property, would not of itself show undue influence in procuring the deed.

5. *Same.*—The evidence examined and held to show that the deed attacked was not procured by undue influence.

6. *Cancellation of Instruments; Jurisdiction.*—Equity will not take jurisdiction to cancel a deed on the ground merely that it was uncertain.

APPEAL from Wilcox Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Leila Hawthorne and others, against J. D. Jenkins and others, to cancel and annul certain deeds as void for undue influence in their procuring. From a decree for respondents complainants appeal. Affirmed.

The bill is filed by two daughters and a grand daughter of Dr. Thomas G. Jenkins, for the purpose of setting aside two deeds made by Dr. Jenkins in his life time to two sons and a son in law conveying his farm of about 2,600 acres, and another to his unmarried daughter conveying his homestead and 160 acres of land adjoining, the two deeds including all of the real estate and substantially all of the property of the grantor. The grounds stated are, first, that the deeds were void for the mental incapacity of the grantor at the time of their execution; second, that they were secured by the active and collusive efforts of the beneficiaries named therein by means of undue influence exerted upon the mind of the grantor; and also that there was fiduciary relations existing between grantor and grantees at the time the deeds were executed, the grantees being the dominant parties in the transaction, and the grantor not having the benefit of competent, independent advice. Dr. Jenkins died on the night of December 9, 1901, and the deeds in question were executed on the morning of November 25, 1901, just two weeks before his death. The consideration recited in the main deed is $5,000, but the actual consideration was the assumption and payment by the grantees of all the debts of the grantor aggregating about $5,800. The minor deed to the unmarried daughter was a deed of gift, and the bill charges its invalidity also on the ground of incurable uncertainty in the description of the lands conveyed.

[Hawthorne, et al. v. Jenkins, et al.]

At the time of his death Dr. Jenkins was 79 years old, and the evidence was without dispute that he had been an able and successful physician; that he was a man of unusual intelligence and mental vigor; that he was self-reliant, self-assertive and independent; and that he was masterful in his domestic relations and firm but kind in his sway over his family, and in the control of his business affairs. In his later years the operation of his farm had not been as successful as formerly, and debts had gradually accumulated to an amount he was unable to pay, and on account of the depreciated condition of the land and his own advanced age, he had been unable to secure in 1901, a loan sufficiently liberal to cover his obligations. In that year his physical health had begun to fail and heart trouble of long standing became more acute until in October he began to remain in the house, and was on several occasions of severe attack alternately confined to his bed. He had six children, four daughters and two sons, three of the daughters having married and left home. One of the daughters had died leaving a daughter of her own. Two of these daughters and a granddaughter are complainants herein. Emma Jenkins, the youngest and unmarried daughter, and Percy Jenkins, the youngest son, lived with their father until the time of his death, and these, together with his other son, J. D. Jenkins, and the other daughter, Mrs. Jones, and her husband, are the beneficiaries under the two deeds mentioned, and are named as parties respondent. The value of the farm at the time it was deeded to respondents is variously estimated at from $5,000 to $13,000.

W. A. GUNTER, and A. D. PITTS, for appellant. The grantor was 79 and almost as deaf as a post, as well as very much afflicted in sight.—*Hatch v. Hatch*, 9 Ves.

295; *Noble v. Moses,* 81 Ala. 530; *McQueen v. Wilson,* 131 Ala. 606; *Bancroft v. Otis,* 91 Ala. 279. Where parties in the situation here accept such a deed and leave the engagement constituting the sole consideration to rest in parol, it is a clear case of fraud, of actual fraud. —22 Atl. 997; 97 Barb. 91; 31 N. J. E. 594; *Noble v. Moses, supra.* The normal presumption of freedom from undue influence was overcome.—*Couch v. Couch,* 148 Ala. 332, and authorities supra.; *Neal v. Neal,* 155 Ala. 604, and cases cited.

W. W. QUARLES, and E. N. & P. E. JONES, for appellee. The burden of proving mental incapacity and of overcoming the normal presumption that the parent is the dominant party, is on the party who avers it.— *Rawdon v. Rawdon,* 28 Ala. 565; *Stubbs v. Stubbs,* 33 Ala. 555; *While v. Fairlee,* 81 Ala. 563; *Schiefferlin v. Schiefferlin,* 127 Ala. 37; 22 Cyc. 1206. The evidence was not sufficient as to undue influence to avoid the deed.—*Dunlap v. Robinson,* 28 Ala. 100; *Shipman v. Forniss,* 69 Ala. 555; *Jackson v. Rowell,* 87 Ala. 685; *Eastis v. Montgomery,* 95 Ala. 493; *Mullin v. Johnson,* 157 Ala. 262. The law does not raise the presumption of undue influence in this case.—*Stanfield v. Johnson,* 159 Ala. 548; *McLeod v. McLeod,* 145 Ala. 269. Messrs. Keith & Wilkerson filed a brief for the British, American Mortgage Company, Limited, cross-complainants in the court below on right to subrogation, and in answer to the agreement of undue influence in addition to that filed above, but it is not deemed necessary to here set out their argument.

SOMERVILLE, J.—It is conclusively shown by the evidence, without serious conflict, that at the time he executed the two deeds here sought to be annulled Dr.

Jenkins was not only sound of mind, but was alert and vigorous in the use of his mental faculties. It also very clearly appears that he himself conceived the plan of saving his farm from the incubus of his accumulated debts by turning the property over to his sons and son-in-law on their undertaking to pay off the debts, and that he was not in fact unduly influenced in the transaction by any of the grantees named in the deeds, nor by any one collaterally interested therein. The testimony of complainants themselves does not seem to controvert that theory; their point of contention being, as we read the record, that the principal deed was not intended as a grant in fee to the three grantees, but as a grant in trust for all of the grantor's heirs, who were to take by inheritance as soon as the alleged trustees had freed the property of the debts with which it was incumbered.

It is argued in the brief for complainants that the grantor did not intend to make an *absolute* deed to his sons, and that he executed the deed to them without knowing or understanding its contents or its effect. This contention is not supported by the evidence, and the conclusion cannot be escaped that a man of the grantor's education and intelligence, in the full exercise of his faculties, who directed the scrivener in the framing of the deed, and who took it in his hands, and apparently read it over, and declared it was "'just what he wanted," understood, approved, and adopted the deed as executed.

The only plausible theory upon which complainants' case can be rested is that fiduciary relations existed between the grantor and the grantees, or some of them, that the grantees dominated in the transaction, and that the grantor did not have the benefit of competent independent advice. The relation of parent and child is

per se a confidential relation, but it is always presumed, prima facie, that in all transactions between them the parent is the dominant party, and that they are free from undue influence.—*McLeod v. McLeod,* 145 Ala. 269, 40 South. 414, 117 Am. St. Rep. 41; *Dolberry v. Dolberry,* 153 Ala. 434, 44 South. 1018; *Stanfill v. Johnson,* 159 Ala. 546, 49 South. 223; *Neal v. Neal,* 155 Ala. 604, 47 South. 66; *Bain v. Bain,* 150 Ala. 453, 43 South. 562; *Couch v. Couch,* 148 Ala. 332, 42 South. 624; *Sanders v. Gurley,* 153 Ala. 459, 44 South. 1022. In such cases the burden is upon the complainant to overcome this presumption, and to reasonably satisfy the court that time and circumstances have reversed the order of nature, so that the dominion of the parent has not merely ceased, but has been *displaced,* by subservience to the child.

"Where evidence is introduced showing that the parent has reached the state of senility and is dominated by the child, it would then be incumbent upon the child to show the fairness of the transaction, and that the parent acted upon free and independent advice."—*Dolberry v. Dolberry, supra.*

And "where a deed is made by a parent to a child, whether natural or adopted, the burden rests upon the party assailing it to prove incapacity or undue influence."—*Stanfill v. Johnson, supra.*

Mr. Pomeroy, writing on this particular subject, says: "Where the positions of the two parties are reversed, where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conferring benefits upon the child may be set aside. Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity; a gift from parent to child is

certainly not presumed to be invalid."—2 Pom. Eq. Jur. (3d Ed.) § 962. The authorities cited by Mr. Pomeroy are numerous, and amply support the text. They justly distinguish the relation of parent and child, in so far as gifts or grants from the parent to the child are concerned, from other classes of confidential relations, and they revoke such benefits only where the exercise of actual undue influence is shown, and not merely because of a confidential relation and the absence of competent independent advice to the grantor. The fundamental reason for this distinction is that gifts and benefits flow naturally from parent to child, and are in accordance with the social instincts and the common practice of all mankind. Hence, even where the dominance of the parent has presumptively ceased, the inquiry is not solely whether the parent had competent independent advice, but whether on all the evidence it reasonably appears that the beneficial act proceeded from the free volition of the parent without imposition or coercion on the part of the beneficiary. See especially *Burton v. Burton,* 82 Vt. 12, 71 Atl. 812, 17 Ann. Cas. 984, and note collecting all the authorities; *Burwell v. Burwell,* 103 Va. 314, 49 S. E. 68; *Clark v. Clark,* 174 Pa. 309, 34 Atl. 610, 619; *Haynes v. Harriman,* 117 Wis. 132, 92 N. W. 1100; *Wessell v. Rathjohn,* 89 N. C. 377, 45 Am. Rep. 696; *Mackall v. Mackall,* 135 U. S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84; *Sawyer v. White,* 122 Fed 223, 58 C. C. A. 587. This doctrine is not in conflict with the principles declared in *Noble's Adm'r v. Moses,* 81 Ala. 530, 1 South. 217, 60 Am. Rep. 175, for the case there was one of benefit proceeding from the child to the parent. Nor is it in conflict with the principles stated in *McQueen v. Wilson,* 131 Ala. 606, 31 South. 94. In that case a *testamentary* act was involved, and not a transaction inter vivos, and in discussing the gen-

eral subject of undue influence the rules governing confidential relations in general, as declared in *Noble's Adm'r v. Moses,* were stated obiter in the opinion, but the application was made to the intimate relation of "rector and parishoner, priest and penitent," coupled with sickness of the one, and great confidence reposed in the other.

Appellants' contention is that in the present case they have overcome the normal presumption of freedom from undue influence, and that the dominance of the grantees in this transaction is established by evidence of the age, weakness, sickness, debility, and distress of the grantor, coupled with the fact that the grantees were both his nurses and his confidential agents; and they point in this connection to the inexplicable folly of the grantor denuding himself of his entire estate, and to his unnatural preference of some of his children at the expense of others. We are satisfied, however, from the evidence before us, that neither age nor physical weakness had materially impaired the mental vigor and the moral independence of Dr. Jenkins when he made these deeds. Nor was he physically helpless and dependent, however much he may have suffered with intermittent paroxysms of heart trouble. Mrs. Hawthorne, one of the complainants, on cross-examination says of his mentality: "He was a man of unusual strength of mind; he was a man that studied over anything a long time before he made up his mind to it, and when he did make up his mind he was almost always right. He seldom made a mistake about anything." Of his family relation she says: "My father ruled and dominated his household, but in a proper way. He ruled at all times, and saw that all things were done and carried out as he wanted, just as far as he could." With respect to the grantor's two sons, Percy and Jim, she expresses

the opinion that they had no undue influence over him, and also that the deed to them was made of his own free will.

Undoubtedly, as all the evidence shows, Dr. Jenkins was a man of imperious will and strong and self-reliant mentality. There is not even a suggestion in the record that he ever relied upon the counsel of his sons, or ever deferred to their judgment in business or other matters. Everything tends to show that he was not in the least degree subject to their influence, and that they never attempted to influence him. Complainants have wholly failed to show that age, physical infirmity, sickness, or mental distress had robbed him of his moral dominion over his family, or rendered him subservient to their sway, and these factors alone raise no presumption of so radical a metamorphosis, in the absence of satisfactory proof of mental infirmity also.—17 Ann. Cas. note 991. And neither do the facts of a common residence and the exclusion of other children from the grantor's bounty or favor.—(Id.)

In *Highberger v. Stiffler,* 21 Md. 338, 353, (83 Am. Dec. 593), one of the cases cited for appellants, the conditions which evidenced such a change are thus vividly portrayed: "The natural relation of the parties was reversed in this instance by the influence of time. The parent had become a child, and the child was guardian to the parent. The same dependence, overweening confidence, and implicit acquiescence which rendered one an automaton in the hands of the other existed, 'et ubi eadem ratio, ibi idem jus.' The wish of the agent had become the will of the principal. Whatever the former suggested, the latter executed. There was no consent of two minds, but a merger of the principal's mind into the agent's."

There is no substantial support for the argument based upon the theory that any of the grantees in the farm deed was the "confidential agent" of the grantor. No doubt they served him as most sons do, and aided him in the operation of the farm, but there was no business confidence reposed in them, so far as the evidence shows. It is true that the daughter Emma never married, as did her elder sisters, and that she remained in her father's house and cared for his wifeless home and for his person as a devoted daughter might, and it is doubtless true that he was very fond of her and indulged her wishes in many ways; but this does not show the nurse-dominant relation of confidence and dependence which arouses the suspicion of the law. And, even if it did, she was also his beloved child, and his gift to her was too natural, too just, and too appropriate to warrant judicial condemnation. So far as the farm deed is concerned, she had nothing to do with its procurement, and no share in its benefits and so her relation to her father was immaterial to its validity.

The farm deed was by no means a deed of gift. Taking a fair average of the values placed upon it by a number of witnesses, the farm was probably worth at that time about $8,000. On the other hand, Dr. Jenkins owed debts aggregating about $5,500. The margin was so small that he had been unable to secure a loan large enough to discharge his several obligations. He was anxious to save his business reputation, and averse to a sale of his farm under the hammer; but it does not appear that he was unduly distressed—certainly not to the point of moral duress. He was advised by two reputable practitioners, one of whom knew his circumstances, to turn the place over to his sons and let them save it if they could. In carrying out this plan, Dr. Jenkins could not in reason have expected the sons

[Hawthorne, et al. v. Jenkins, et al.]

to undertake the responsibility and labor of paying off a large indebtedness, and, if successful after years of struggle, to then divide the property on equal terms with the other children. Doubtless they would have promptly refused such an undertaking. Under the circumstances, we perceive neither domestic nor financial eccentricity in the execution of the farm deed as an ab-solute conveyance.

Nor can we discover in the circumstances of Dr. Jenkins the tragic case of a modern Lear, as graphically pictured by the learned counsel. He was a skilled physician, and must have known on November 25, 1901—what any intelligent layman could have told him—that his days on earth would be very few. Hence very naturally he was not concerned about himself, but had chiefly in contemplation the future of his good name and the fate of his cherished farm.

We have considered all the evidence, but it is neither practicable nor profitable to further discuss it here. We are satisfied that the deeds in question were not procured by undue influence, actual or constructive, and that they ought to be sustained as the free and intelligent acts of the grantor.—*Stroup v. Austin*, 180 Ala. 240, 60 South. 879.

If the deed to Emma Jenkins is void by reason of an incurably defective description, the only consequence is that the lands therein attempted to be conveyed passed under the other deed to the other respondents; and, in any case, equity would not take jurisdiction merely to declare the deed void for uncertainty.

The decree of the chancery court will be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.