(103 So. 877)

**PAYNE et al. v. POWE et al.   (7 Div. 488.)**

(Supreme Court of Alabama. Nov. 27, 1924. Rehearing Denied April 30, 1925.)

I. Deeds ⊂⇒196(3)—Son had burden to show conveyances from aged father proceeded from free and intelligent volition of latter, without imposition or coercion.

Where son exercised complete control of personal needs of father, aged 70 years, and relation between them was per se confidential, burden devolved on son to show that conveyances from father to him proceeded from free and intelligent volition of father, without son's imposition or coercion.

2. Deeds ⊂⇒210—Evidence held insufficient to discharge son's burden to show aged father received full value for farm deeded to him.

Where relations between son and aged father were per se confidential, evidence *held* insufficient to discharge son's burden to show father received full value for farm deeded to him.

On Rehearing.

3. Appeal and error ⊂⇒1177(1) — Defendant not having made claim against estate, and having agreed estate was not interested, held precluded from urging that case be remanded to permit him to enforce claim.

In action to cancel deeds from aged father to defendant son, where defendant made no claim as against father's estate for amounts paid out for deceased's benefit, and on appeal agreed that decedent's estate was not interested and that no administrator be appointed, on reversal of judgment for defendant, latter was precluded from urging that case be remanded to permit him to enforce claim as creditor of estate.

Appeal from Circuit Court, Talladega County; S. W. Tate, Judge.

Bill to cancel conveyances, by Marguerite Powe Payne and others against Frank H. Powe and others. From a decree dismissing the bill, complainants appeal. Reversed and rendered.

Lapsley & Carr, of Anniston, and Joel F. Webb, of Birmingham, for appellants.

The burden was upon the grantee to show absence of undue influence. Couch v. Couch, 148 Ala. 332, 42 So. 624; Neal v. Neal, 155 Ala. 604, 47 So. 66.

Knox, Dixon, Sims & Bingham, of Talladega, and James J. Mayfield, of Montgomery, for appellees.

Influence to be undue must be such as to destroy free agency. Harris v. Bowles, 208 Ala. 545, 94 So. 757; 12 Michie's Ala. Dig. 975. There is no fraud, unless the party influenced is injured. Powe v. Payne, 208 Ala. 527, 94 So. 587. Prima facie, the parent is the dominating party. 20 R. C. L. 591; Gibbons v. Gibbons, 205 Ala. 636, 88 So. 833; Harris v. Bowles, supra; Hawthorne v. Jenkins, 182 Ala. 260, 62 So. 505, Ann. Cas. 1915D, 707.

SAYRE, J. Appellants, daughters of Julius A. Powe, who died since the evidence in this case was taken, filed the bill in this cause to set aside two conveyances, executed by their father on November 13, 1914, and August 4, 1917, by which the apparent title to a farm of 433 acres passed into the appellee Frank H. Powe, a son of deceased. The charge is that these conveyances, each to one-half (approximately) of the farm, were procured by undue influence, and upon a former appeal (Powe v. Payne, 208 Ala. 527, 94 So. 587) it was ruled that appellants were entitled to file the bill in virtue of a deed from their father, of date January 19, 1920, then —at the filing of the bill—still in life. The issue is mainly one of fact and the due application of the law of undue influence.

The grantor in these conveyances, about which the parties are in disagreement, was, in the summer of 1910, in business at Talladega as the chief owner of a corporation. In that summer his corporation went into bankruptcy, and he suffered a severe stroke of apoplexy, which thereafter kept him abed for months—nearly a year, it seems—and disabled him for the regular pursuit of any sort of business for several years. In June, 1911, his wife, the mother of these parties, died, and in the late fall of that year appellee came over from Jefferson county, where he had practised his profession as a civil engineer, and with his father and Mary, his youngest sister, a moron, with the mind of a child of 6 years, went to the farm to live. Before that Julius A. Powe had made a will, leaving all his property to his wife, and it is highly probable that, anticipating the early death of Julius, his wife had an understanding with appellee that he should ultimately have the farm in consideration of his care of the family since his father's failure in business and in the future. But of course the mother had no right to dispose of the father's property without his competent consent. In August, following the death of his wife, Julius made a second will, leaving everything to appellee. This will is now of importance only as going to show a management of things with a view to vesting exclu-

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sive ownership of the farm ultimately in appellee, for, June 15, 1914, Julius, declaring that it did not represent his wishes, entered into a formal act of revocation at the same time and in the same instrument, declaring it to be his desire and intention that all his property should descend to his four children equally.

[1] Appellee's testimony is that the understanding between his father and himself was that he should take charge of the farm, give his father his board and rent at the rate of $600 per annum, work out his debts, and have what was left at his death. Appellee had, since Julius suffered his stroke, assumed full control and management of his affairs, and so continued to do until August 4, 1917, when his father executed the last of the conveyances in controversy. According to his own testimony he exercised complete control, down to the smallest items of the personal needs of his father and his moron sister, whose board he charged to his father. On appellee's suggestion, in the circumstances amounting to dictation, the father executed mortgages and the two deeds in question. The relation between the two was per se confidential, and on the evidence, the effect of which has been stated in bare outline, it is impossible to avoid the conclusion that time—the father was then close to 70 years of age—and circumstances had reversed the order of nature, and that the usual dominance of the parent had been displaced by subservience to the child. The parent had no independent advice except upon the occasion when he revoked the will which he had made for the exclusive benefit of appellee. In these circumstances the settled policy of the law devolves upon appellee the burden of showing that the two conveyances in question proceeded from the free and intelligent volition of his father, without imposition or coercion on the part of the beneficiary. Hawthorne v. Jenkins, 182 Ala. 255, 62 So. 505, Ann. Cas. 1915D, 707; Couch v. Couch, 148 Ala. 332, 42 So. 624, is much in point. We paraphrase language of the last-cited case as follows. If it be urged that appellee's grantor manifested an understanding of his acts and approved the transactions into which he entered, yet it does not appear that there was a severance of the confidential relation by the interposition of competent, independent, and disinterested advice. As Lord Eldon said, in Huguenin v. Baseley, 14 Ves. 300, the question is, not whether the grantor knew what he was doing, had done, or proposed to do, but how the intention was produced.

[2] Appellee undertakes to show that the transactions by which he acquired title to this farm were fair and reasonable—that these conveyances did no more than give him just compensation for money advanced by him to discharge liabilities incurred by his father before they went to the farm and for the support of his father and sister down to the date of the last conveyance, and, if this has been shown, it should avail much in support of the burden laid upon him by the law. The deed of November 13, 1914, purporting to convey 212½ acres, recited a consideration of $5,820; that of August 4, 1917, purporting to convey the remainder of the farm, 217 acres, more or less, recited a consideration of $8,680. These recited considerations total $14,500, and the immediate inquiry is whether Julius A. Powe, the father, was indebted to appellee in that sum, and, if so, whether that sum fairly represents the value of the farm. In December, 1917, this land with its improvements was valued for a loan from the Federal Land Bank at $13,000; but this, we feel sure, was a very conservative estimate of its value. The land with its improvements, on a very reasonable estimate, was worth, we should say, $15,000. There is evidence going to show that both appellee and his father on one occasion at least valued it at a much higher figure. Two witnesses speak of it as worth from $25 to $40 an acre. None place its value below $25, and opinions which do place the value so low appear to have reference to the land only, where as there were valuable improvements on the property. Tenants, to whom parts of the land were let, paid an average annual rental of 15 bales of cotton.

On May 10, 1919, shortly before Julius A. Powe left the farm and went to live with his daughter Mrs. Payne, in Anniston, appellee had him to acknowledge and sign a statement of the account between them, covering all items of debit and credit down to that day. This account, down to 1917, charges the father with all the personal expenses of himself and his daughter Mary, including the board of the latter. It shows an indebtedness of $14,009.48 on January 1, 1917, and $15,237.96 on January 1, 1918. The items making the difference are for the most part undated. Julius A. Powe is credited annually with $600 as rent. This credit for the year 1917 lacked more than $500 of meeting interest charges which had been growing from year to year, and these interest charges in excess of $600 were made to bear interest. Of course appellee had the right to charge interest for moneys and articles of use advanced to his father, but he is not entitled to interest on interest. The cost of all improvements on the farm, aggregating approximately $1,500, is charged to Julius A. Powe, whereas appellee was a tenant, at best a merely prospective owner, and had no right to charge improvements against his landlord. Moreover, the money which paid for these improvements was raised in large part at least by mortgages on the farm. It seems clear that the cost of these improvements is not a proper charge against appel-

lee's grantor. For the year 1915 the proceeds of 6 bales of cotton, about $300, are charged to Julius A. Powe. The evidence shows that there had been a constant improvement in Julius A. Powe's physical condition—and mental too—since 1910, and that in 1915—because Julius wanted to do something—appellee let him have the part of the farm cultivated by a tenant, Mose Harris, to operate for himself. No reason occurs to us why the rent cotton collected by Julius should be charged against him as a liability. Mortgages aggregating $4,000 or more were placed on the property prior to the date of the latest of the two deeds in controversy. Appellee fails to show just what went with the money thus realized. Some of it—no doubt most of it—went to discharge old debts due from Julius Powe, but there is a distinct failure to account for all of it.

We will not undertake to state the account between appellee and his grantor after the fashion of bookkeepers. That was incumbent on appellee. But upon the whole record we feel constrained to the conclusion that appellee has failed to sustain the burden put upon him by his relations with the grantor in his deeds, has failed, by several thousand dollars, to show that his grantor got full value for his farm. It results that the deeds of November 13, 1914, and August 4, 1917, and all agreements leading up to them, must be set aside and held for naught. A decree to that effect will be entered here. It is not considered that any other or further relief may be had on this bill.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

On Rehearing.

SAYRE, J. On this application for rehearing, as on the original submission, the record and briefs in this cause have received proper attention.

As for appellees' fourth suggestion of error, viz. that this court erred in failing to hold that the mortgage of the Federal Land Bank was a valid claim against the property in controversy, it will suffice to say that the bank in its answer simply denied the averments of the bill and prayed that it be dismissed with costs. Such was the decree of the trial court. Counsel for the bank has read the opinion heretofore written in this cause to little purpose, if he has found in it anything tending to disturb the decree under review in so far as it affects the Federal Land Bank.

We continue to hold the opinion that the facts and circumstances—the record has been re-examined with a special view to this point—were such as, under the familiar law of this state, to put upon appellee Powe the burden of proving that the deeds under which he claims were the fair and free products of the grantor's volition, and that in this he has signally failed. The only effort to that end, worthy of prolonged reflection, is to be found in the evidence by which this appellee sought to prove that he had given the old man, his father, a fair price for the land. We are still satisfied with our conclusion that in this also appellee failed to sustain his defense.

In connection with the foregoing, appellee makes serious objection to our statement concerning interest. We are confirmed in our conclusion that the statement was substantially correct, and we now note, as a matter proper for consideration, that the money expended in improvements was borrowed on the credit of the old man's property and then charged to him with interest.

We may have charged the old man, appellee Powe's father, with a few years too many. Appellee's brief on rehearing calls attention to this. We now have it from appellee's brief—by fair inference—that his grantor was about 65 years of age at the date of the last conveyance. It is thus still evident that he had passed the prime of his manhood, nor can it be questioned that he had suffered misfortunes, physical and financial, well calculated greatly to magnify the burden of his years—a fact worthy of consideration in connection with the rest in deciding the issues presented by the record. Moreover, the statement of appellee's brief on original submission was that his grantor "was then [about the time of the second deed] almost 70 years old," and on the faith of that statement we thought we might safely proceed.

It is true, as appellee suggests, that we have not considered whether the deed to complainants (and appellee), by which the old man undertook to convey this farm to his four children, share and share alike, was procured by the undue influence of complainants or some of them. It may be enough to say that this matter was not put in issue by appellee's answer—appellee contenting himself with the averment that it was "procured," but whether by fair or foul means appellee does not say—and, further, it seems clear that appellee could not well afford to make the issue, for if, considering the meager opportunities complainants had for such an undertaking as compared with appellee, it had been proved that the old man's deed to all his children was the product of undue influence operating on a debilitated mind, that proof would have tended strongly to establish a state of mind on his part at variance with appellee's contention that previously he had been amply able to care for his own affairs and did in fact competently do so. So far as we are able to draw a conclusion, the deed to all the chil-

dren was executed for the purpose of putting complainants in a position to file this bill, which seeks to make effective the expressed wish and purpose of the grantor as shown by his testimony in this cause. But, however that may be, the substance of appellee's charge against complainants in this connection, when taken at its true value, is that complainants, some or all of them, were, as compared with appellee, derelict in the performance of their filial duty, and for that reason not entitled to the consideration of the court of equity. We do not find it so; but there has heretofore appeared no occasion for an expression of our views as to the comparative merits of the parties in that respect. Even now it is aside from the true issue in the cause and is given the appearance of relevancy only by the remarks of counsel in their brief for rehearing.

[3] Further, it is urged that, if the court persists in its determination to reverse the decree rendered in the court below, the cause should be remanded in order that appellee may have an opportunity to enforce a claim as creditor against the estate of J. A. Powe, deceased, for the amounts paid out by him for the benefit of deceased. But this suggestion, like that affecting the conveyance to complainants, comes too late. Appellee propounded no such claim and, upon the submission here, agreed that the estate of decedent was not interested, and that there need be no delay or expense incurred for the appointment of an administrator.

As for the suggestion that Mary Powe should have been represented by a guardian, it seems sufficient to say that the decree here is in her favor, so that a guardian could hardly better her estate so far as this litigation is concerned.

The court is of opinion that the application for a rehearing should be overruled, and it is accordingly so ordered.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.