# Cox, *et al.* v. Morton.

### *Bill to Cancel Deed For Fraud.*

(Decided June 10, 1915. Rehearing denied June 30, 1915. 69 South. 500.)

*Brokers; Duty to Principal; Interest of Broker.*—Where an ignorant negro woman procured a real estate agent to sell her lands for her, and he persuaded her to execute an option to him thereon for about half the price, or half what the land is worth, and she files a bill against him, to cancel a deed made pursuant to the option, the burden was upon him to prove that the transaction was just, fair and equitable in every respect; the fact that he had acquired an option not destroying the relation of principal and agent, and its attendant confidential relation.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by Clara A. Morton against W. N. Cox and others, to cancel a deed for fraud and undue influence.

Judgment for complainant and respondent appeals. Affirmed.

RUSHTON, WILLIAMS & CRENSHAW, HILL, HILL, WHITING & STERN, and W. C. OATES, for appellant.

W. A. GUNTER, for appellee.

GARDNER, J.—The bill in this case was filed March 8, 1913, by appellee against the appellant, its prime purposes being the cancellation, for fraud and undue influence, of a deed to 190 acres of land, executed by appellee to appellant on March 3, 1913. Complainant had been for a number of years the owner of the land described in the bill, and located in Lowndes county, Ala.

Complainant is a woman of the colored race, and has lived in the city of Montgomery for several years, having been employed, during that time, in the capacity of house servant, in families of white people, and in other work of that character. While there is some evidence tending to show that she was of a very nervous temperament and below the average of her race in intelligence, we rather agree with the testimony of the witness for respondent, a lady for whom complainant worked as house servant for a number of years, that as to her mental calibre complainant was "equal to the average colored woman without education."

Accompanied by her brother, one Jack May, complainant sought a real estate agent for the purpose of placing her lands in his hands for sale, and she and her brother were introduced to respondent Cox. A discussion of the evidence in detail would serve no good purpose. That her purpose was to procure respondent's services in the sale of her property is clear. Re-

spondent Cox is of the white race, and a real estate agent of 20 years' experience in the city of Montgomery, and he has for several years past made a specialty, it seems, of handling farm lands. It is clear that complainant was wholly unacquainted with business matters and with the business world. Cox agreed to "handle the property for her, provided she would give him an "option" on the property at $850 for a period of one year. Complainant, after much hesitation, and, we conclude from the evidence, much persuasion on the part of her brother, and of Cox, also yielded to the arrangement and signed the "option" agreement.

We are convinced that the evidence in this record fully justifies the conclusion that Cox assumed towards complainant, by virtue of the circumstances surrounding the parties and of the execution of the "option" agreement, the relation of agent; and this was the conclusion reached by the court below, as shown in the opinion copied in the record. Complainant's interview with respondent was for the very purpose of procuring his services in the disposition of her property to her best advantage, and the mere fact that said respondent required of her under the circumstances here disclosed, the execution of the "option contract," did not have the effect to destroy the relation of principal and agent, and he was still due her the same duty incident to such relationship.—*Hegenmyer v. Marks,* 37 Minn. 6, 32 N. W. 785, 5 Am. St. Rep. 808. Indeed, the testimony of Cox himself indicates such relationship, wherein he stated, "I told them I could not handle it without an option," and states in another sentence, "I took the option for a long time, because I didn't know how soon I could attend to it, or how long it would take me to find a purchaser, in case I did not want it myself." The

[Cox, et al. v. Morton.]

deed subsequently executed became, therefore, a trans-
action between principal and agent, and it is to be con-
sidered in the light of the law applicable to transac-
tions between those occupying confidential relations.
Speaking to this subject, our court, in *Burke v. Taylor,*
94 Ala. 10 South. 129, said: "In the case of *Waddell
v. Lanier,* 62 Ala. 349, it is said: 'All transactions be-
tween trustee and cestui que trust, guardian and ward,
attorney and client, principal and agent, parent and
child, are narrowly watched and jealously scrutinized
in courts of equity. In all the variety of the relations
of life in which confidence is reposed and accepted, and
dominion may be exercised by one person over another,
the court will interfere, and relieve against contracts or
conveyances, when they would abstain from granting
relief if no particular relation existed between the par-
ties in which trust and confidence was reposed and ac-
cepted, and there was not an opportunity for an abuse
of the confidence and the exercise of undue influence.
* * * It is certain that agents are not permitted
to become secret vendors or purchasers of property
which they are authorized to buy or sell for their prin-
cipals, or, by abusing their confidence, to acquire *un-
reasonable gifts or advantages, or to deal validly with
their principals in any case, except when there is the
most entire good faith, and a full disclosure of all the
facts and circumstances, and an absence of all undue
influence, advantage, or imposition.'*— citing 1 Story
Eq. § 315. In all such cases, the burden rests on the
party claiming under the deed to prove satisfactorily
that it is just, fair, and equitable in every respect
and not on the party seeking to avoid it to establish it
is fraudulent."

And in *Waddell v. Lanier,* 62 Ala. 347, from which case the above authority so fully quotes, discussing the principle underlying the rulings of the courts in such cases, it is said: "Though in this class of cases there are often marks and traces of direct and positive fraud, of artifice, imposition, overreaching, and unconscionable advantage, the principle on which the court proceeds, in granting relief, does not depend on the existence of such facts. Relief is granted, not because there is any actual fraud, but on a principle of public policy, to prevent fraud, and to remove all temptation for its commission."

To the same effect, also see 2 Pom. Eq. Jur. (3dEd.) § 955.

Under the above rule, well-nigh universally recognized, the burden rested upon the respondent to reasonably satisfy the judicial mind that the transaction was just, fair, and equitable in every respect. We are of the opinion, under this evidence, that the reasonable market value of the property was not less than $1,600. Respondent Cox is shown to have stated to the attorney who witnessed the execution of the deed that in his opinion the property was worth $2,000; indeed, in his answer is the following admission: " He admits that it was his opinion at the time said deed was executed that the said land had a speculative value of $1,600 or more."

Before the execution of the deed complainant was offered the sum of $1,600, and she requested respondent to permit her to sell; but he refused, and insisted that the property be deeded to him. Respondent carried the deed to the home of complainant for execution, and there the money was paid to her in cash, in the sum of $850; the deed, however, reciting a consideration of $2,500. The next morning complainant ten-

dered to the attorney who witnessed the execution of the deed, and who, it seems, still had the same, the sum of $850 paid her the day before, requesting the return of the deed, and he referred her to respondent Cox. The bill was filed a few days thereafter, and the money was paid into court.

That respondent Cox was insistent and anxious for the consummation of this transaction is clearly shown. It also appears that much persuasion was exercised on the part of the brother, Jack May, and that this was, to say the least of it, acquiesced in by said Cox. Indeed, there is evidence indicating that respondent himself indulged in some argument tending to convince complainant that the property was of no greater value, and that she would not be able to get any better price, and that said May, with respondent's knowledge, rendered valuable assistance in this respect. It further appears that, upon learning that others might purchase at a larger price, respondent exercised more than ordinary haste to close the deal, as evidenced by the fact that, as respondent was procuring a loan from a resident of Birmingham with which to pay the purchase price, he had the bank advance the sum temporarily, upon the production of a telegram, before the checks arrived. But a discussion of the evidence is not intended. Suffice it to say it has been most carefully examined, and we are persuaded that the respondent has not met the burden of proof resting upon him. We think the case vindicates the rule as announced in the above-cited authorities. In *Waddell v. Lanier, supra,* the writer of the opinion quotes from Judge Story the following expression: "And, indeed, considering the abuses which may attend any dealings of this sort between principals and agents, a doubt has been expressed wheth-

[Weil v. Hill.]

er it would not have been wiser for the law in all cases to have prohibited them, since there must always be a conflict between duty and interest on such occasions."

The rule, however, is not extended this far, but such transactions are closely scrutinized, and the burden rests upon the agent to prove that it was just, fair, and equitable in every respect.—*Waddell v. Lanier, supra; Burke v. Taylor, supra,* 2 Pom. Eq. Jur. § 957; *Hegenmyer v. Marks, supra.*

We are convinced that the decree of the city court setting aside the transaction is correct, and it is accordingly here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.