33 So.2d 909

**WEBB et al. v. WEBB.**

**WEBB v. SAME.**

**5 Div. 418, 418–A.**

Supreme Court of Alabama.

Jan. 22, 1948.

Rehearing Denied Feb. 19, 1948.

Jacob A. Walker, E. H. Glenn, and R. C. Smith, all of Opelika, and W. Howell Morrow, of Lanett, for appellants.

200

Denson & Denson and L. J. Tyner, all of Opelika, and Martin, Turner & McWhorter, J. C. Blakey, and Alvin W. Vogtle, all of Birmingham, for appellees.

LAWSON, Justice.

Mr. L. T. Wimberly, a bachelor, approximately eighty-five years of age, a resident of Loachapoka, Lee County, Alabama, died May 18, 1943. He left a large estate, which he disposed of by will dated April 1, 1941.

There were a few specific bequests, but the bulk of his estate, the residue thereof, was left under the terms of the will to eight nieces and nephews, each of whom was to receive an undivided one-eighth interest in the residue of the estate.

Dr. W. W. Webb, a veterinarian, one of the nephews, was named in the will as executor and provision was made in the will that if Dr. Webb died, declined to act, or was disqualified for any reason, he should be succeeded by his brother, Grady Webb.

Letters testamentary were issued to Dr. W. W. Webb on June 14, 1943, and he served as executor of the Wimberly will and estate until May 26, 1944, on which date he was accidentally killed. Dr. Webb died without making final settlement. In accordance with the terms of the will, his brother, Grady Webb, was named succeeding executor of the Wimberly will on May 29, 1944.

On or about June 28, 1943, Mrs. Eloise B. Webb, the widow of Dr. W. W. Webb, deceased, became the administratrix of his estate.

After Dr. W. W. Webb died and Grady Webb was named executor of the Wimberly will and Mrs. Eloise B. Webb was named administratrix of Dr. W. W. Webb's estate, the administrations of the estates were transferred from the probate court of Lee County to the circuit court, in equity, of that county.

We will sometimes hereinafter refer to the administration of the Wimberly estate in the equity court as the Wimberly estate matter and to the administration of the Webb estate as the Webb estate matter.

On February 1, 1945, Mrs. Eloise B. Webb, as administratrix of the estate of Dr. W. W. Webb, deceased, filed in the Wimberly estate matter her petition and report for final settlement of the administration of the Wimberly estate by her intestate, Dr. W. W. Webb, from the time letters testamentary were issued to him until his death, by charging herself as administratrix of his estate with assets of Mr. Wimberly which had come into Dr. Webb's possession in his capacity as executor and crediting herself as administratrix with credits to which she claimed to be entitled, including disbursements as itemized.

Thereafter on May 22, 1945, Grady Webb, individually and as succeeding executor of the Wimberly will, and two of the other beneficiaries under the Wimberly will, filed in the Wimberly estate matter a contest of the report for final settlement theretofore filed by Mrs. Eloise B. Webb on February 1, 1945, as administratrix of the estate of W. W. Webb. Grady Webb had purchased the interests of four of the beneficiaries named in the will and therefore owned five-eighths of the estate. The contestants not only contested a number of the items of disbursement listed in the report for final settlement and for which credit was sought, but as a part of the contest they incorporated a motion to charge Mrs. Eloise B. Webb, as administratrix of the Webb estate, with a number of items in addition to those charged against the Webb estate in Mrs. Webb's petition and report for final settlement. § 308, Title 61, Code 1940.

A claim was filed in the Webb estate matter against the Webb estate by Grady Webb, the succeeding executor of the Wimberly estate, on behalf of that estate. As amended, this claim contained practically the same items as were included in the contest and motion to charge filed in the Wimberly estate matter. Most of the items set out in the claim, as in the motion to charge, related to assets which had belonged to L. T. Wimberly and which had come into the hands of Dr. W. W. Webb during the time

he served as executor of the Wimberly will and for which he had not made account. In some items the Webb estate was sought to be charged with rent for property of the Wimberly estate alleged to have been used by Dr. Webb for his personal use. At least one item was predicated on a transaction between Dr. Webb and Mr. Wimberly which occurred prior to the latter's death. Mrs. Eloise B. Webb, as administratrix of the Webb estate, gave notice in writing that such claim was disputed in part and specified the part disputed. § 216, Title 61, Code 1940, as amended.

So it appears that the administrations of these two estates were pending in the circuit court of Lee County, in equity, at the same time.

In the Wimberly estate matter there was before the equity court for determination the issues presented by the amended petition and report for final settlement of the administration of the Wimberly estate by Dr. W. W. Webb, filed by Dr. Webb's administratrix, Mrs. Eloise B. Webb, and the contest and motion to charge interposed thereto.

In the Webb estate matter there was before the equity court for determination the issues presented by the amended claim filed against the Webb estate on behalf of the Wimberly estate by Grady Webb, as succeeding executor, and the contest of such claim as interposed by Mrs. Eloise B. Webb, as administratrix of the W. W. Webb estate.

The issues in the two proceedings were the same in most material respects. Consequently, the parties agreed that these two causes should be tried and submitted jointly and that only one decree should be rendered, which was to be applicable to both causes.

In accordance with such agreement, the two causes were tried together. Testimony of all witnesses was taken orally before the court.

Also in keeping with the agreement of the parties, only one final decree was rendered.

Of the numerous items of account still at issue at the time of final decree, the trial court sustain the position of Grady Webb, as succeeding executor of the Wimberly will and estate, with reference to many of such items and sustained the position of the administratrix of the W. W. Webb estate as to other items. The court rendered judgment in favor of the Wimberly estate in the amount of $25,243.76, but allowed the administratrix of the W. W. Webb estate to credit upon such judgment the amount fixed by the court as fees for the executor ($2,500), attorneys ($5,000), and guardian ad litem ($250).

In view of the credits allowed, the amount which was due the Wimberly estate by the Webb estate under the trial court's decree was $17,493.76. This amount was paid by Mrs. Eloise B. Webb, as administratrix of the Webb estate, to the Wimberly estate, with the understanding that such payment would not prejudice the right of either party to appeal, and it was stipulated that in the event of an appeal the records in both causes might be combined into one transcript and that the decree rendered by this court on appeal should dispose of the issues which were before the trial court, as set out in the final decree.

Appeal to this court has been taken in each of the causes. In the Wimberly estate matter the appeal is taken by Grady Webb, individually and as executor of the will and estate of L. T. Wimberly, deceased, and by Hannah W. Peddy and Amma W. Carlyle. Hannah W. Peddy and Amma W. Carlyle are two of the beneficiaries under the Wimberly will. In the Webb estate matter the appeal is taken by Grady Webb, as executor of the will and estate of L. T. Wimberly, deceased.

Both appeals are incorporated in one transcript and have been consolidated here.

Item 6 of the claim filed in the Webb estate matter against that estate by the succeeding executor of the Wimberly estate was as follows: "Amount due on transaction involving sale of timber of L. T. Wimberly to Auburn Ice & Coal Company, paid to W. W. Webb but not accounted for to estate of L. T. Wimberly, dated on or about May, 7, 1943, $22,500." The same transaction is made the basis of Item 6 in the motion to charge filed in the Wimberly estate matter.

The trial court disallowed such claim against the Webb estate in both cases. The

first assignment of error in each of the appeals relates to this action of the trial court.

This transaction took place prior to the death of L. T. Wimberly, which occurred on May 18, 1943. The main theory upon which appellants seek to fasten liability on the Webb estate is as follows: That W. W. Webb was the agent of L. T. Wimberly and as such agent agreed to sell certain timber belonging to Wimberly to the Auburn Ice & Coal Company for the sum of $25,000; that a "binder" of $2,500 was paid by the Auburn Ice & Coal Company, which was credited to Wimberly's account in a bank in Auburn; that, thereafter, W. W. Webb, by the exercise of undue influence over L. T. Wimberly, secured a deed from Wimberly to the timber, which deed recited the payment by W. W. Webb of the sum of $15,000 as consideration, but it is claimed no consideration was ever paid; that W. W. Webb then conveyed the timber to the Auburn Ice & Coal Company for a recited consideration of $25,000 but was only paid $22,500 inasmuch as $2,500 had been paid previously as a binder; that the said sum of $22,500 was not paid to Wimberly during his lifetime nor was it accounted for to his estate, but was kept by W. W. Webb and deposited by him in his personal bank accounts.

Appellants do not question the right of the Auburn Ice & Coal Company to the timber. They seem to treat the deed from W. W. Webb to the Auburn Ice & Coal Company as having been executed by Webb as the agent of Wimberly, and seek to recover from his estate the money which he received from the sale of the timber as agent and for which he did not account. This theory, of course, is predicated on the invalidity of the deed from Wimberly to Webb.

■ ■ The mere fact that the timber transaction occurred prior to Mr. Wimberly's death and therefore prior to the time W. W. Webb qualified as executor of his will does not relieve Webb's administratrix of the duty of accounting for the $22,500 in her report for final settlement of his administration of the Wimberly will and estate. If the timber deed was obtained from L. T. Wimberly by W. W. Webb in the manner above stated, Webb became indebted to Wimberly for the amount of money which he received from the sale of the timber. Upon his qualification as executor of the Wimberly will and estate, being both payor and payee, the law raises a presumption of payment, or otherwise stated, the debt became extinguished as a matter of law, and the amount thereof became assets of the estate in the hands of the executor to be accounted for on final settlement of his trust. Such is the rule as stated in Lindsey v. Lindsey, 229 Ala. 578, 158 So. 522. See, also, Walsh v. Walsh, 231 Ala. 305, 164 So. 822, and Faust v. Faust, 248 Ala. 660, 29 So.2d 133.

■ The law presumes the exercise of undue influence in transactions inter vivos where confidential relations exist between the parties, and puts upon the donee or grantee, when shown to be the dominant party in the relation, the burden of repelling the presumption by competent and satisfactory evidence. Nelson v. Brown, 164 Ala. 397, 51 So. 360, 137 Am.St.Rep. 61; Boney v. Hollingsworth, 23 Ala. 690; Waddell v. Lanier, 62 Ala. 347; Burke v. Taylor, 94 Ala. 530, 10 So. 129; Cox et al. v. Morton, 193 Ala. 401, 69 So. 500; Floyd v. Green, 238 Ala. 42, 188 So. 867, and cases there cited.

In the case of Waddell v. Lanier, supra, it was said:

"All transactions between trustee and *cestui que trust,* guardian and ward, attorney and client, principal and agent, parent and child, are narrowly watched and jealously scrutinized in courts of equity. In all the variety of the relations of life, in which confidence is reposed and accepted, *and dominion may be exercised by one person over another,* the court will interfere and relieve against contracts or conveyances, when they would abstain from granting relief, if no particular relation existed between the parties, in which trust and confidence was reposed and accepted, and there was not an opportunity for an abuse of the confidence and the exercise of undue influence. * * *

"The relation of principal and agent, is affected by the same considerations which influence the court in dealing with trans-

actions between persons standing in other fiduciary relations. * * * 'It is * * * certain that agents are not permitted to become secret vendors or purchasers of property which they are authorized to buy or sell for their principals; or, by abusing their confidence, to acquire *unreasonable gifts or advantages;* or * *. * *to deal validly with their principals in . any case, except when there is the most entire good faith, and a full disclosure of all the facts and circumstances, and an absence of all undue influence, advantage or imposition."* 62 Ala. at pages 349, 350.

That statement was approved in Burke v. Taylor, supra, where it was further said: "In all such cases the burden rests on the party claiming under the deed, to prove satisfactorily that it is just, fair, and equitable, in every respect, and not on the party seeking to avoid it to establish that it is fraudulent." 94 Ala. at page 533, 10 So. at page 130.

The rule is based upon the grounds of public policy, and was never intended to deprive one of the right of a voluntary and untrammeled disposition of his own property, but rather to guard and protect that right. It is in effect a rule of evidence, putting upon the dominant party in confidential relations, claiming a benefit under the transaction, the burden and duty of rebutting and overcoming the prima facie case so made by the presumption which the law raises. Hutcheson v. Bibb et al., 142 Ala. 586, 38 So. 754.

But for such a presumption to be raised the evidence must show clearly and satisfactorily: (1) That a confidential relation existed between the grantor and grantee; (2) that the grantee was the dominant spirit. Wooddy v. Matthews, 194 Ala. 390, 69 So. 607.

The relation of uncle and nephew is not per se confidential. Abrams v. Abrams, 225 Ala. 622, 144 So. 828; McKinney v. Weatherford et al., 242 Ala. 493, 7 So.2d 259. However, that of principal and agent is a confidential relationship. Waddell v. Lanier, supra; Burke v. Taylor, supra; Cox et al. v. Morton, supra; Spiva v. Boyd, 206 Ala. 536, 90 So. 289; Worsham v. Johnson, 231 Ala. 265, 164 So. 381. The

evidence is clear and convincing and in fact without dispute that at the time the deed was executed by Mr. Wimberly to Dr. Webb the latter was the agent of the former and as such looked after Wimberly's business affairs. We hold, therefore, that a confidential relationship existed.

We are also of the opinion that the evidence clearly demonstrates that Dr. Webb was the dominant spirit in this relationship. The evidence shows that Mr. Wimberly was of sound mind. But he was eighty-five years of age at the time the deed was executed and had been so ill for a period of six months that a male nurse was needed to administer to him night and day. He recognized that he was too old and feeble to handle business matters and referred those who wished to deal with him in such matters to Dr. Webb. Dr. Webb was a much younger man, actively engaged in many business ventures of his own, in addition to the handling of Mr. Wimberly's business matters. We will not here attempt to set out the various phases of the evidence which we think indicates that Dr. Webb was the dominant spirit. Suffice it to say that the record is replete with such instances.

The confidential relation existing and the grantee, Dr. W. W. Webb, being the dominant spirit, the burden was upon his administratrix to show that the transaction was fair, just, and equitable in every respect.

It only remains to apply the law to the facts presented upon this record which relate to the timber transaction. There is no dispute as to the following facts.

In the latter part of April or early in May, 1943, one Johnny Adams talked with Mr. Wimberly in regard to the purchase of timber growing on "the Wimberly home place." Adams was acting as agent for the Auburn Ice & Coal Company. Mr. Wimberly told Adams to make him an offer after having the timber cruised. When he returned to see Mr. Wimberly, Adams stated that Mr. Wimberly said "that I would have to make the trade with Dr. Webb, that he was handling his business, that he was in bad health and that he was old." Thereafter, on or about May 1, 1943, Adams to-

gether with W. L. Long, the Secretary-Treasurer of the Auburn Ice & Coal Company, contacted Dr. W. W. Webb relative to the purchase of the timber. According to Adams an offer of $13,000 was made for the timber, to which Dr. Webb replied that "he was acting for Mr. Wimberly and that he was trying to get all that he could out of it for Mr. Wimberly." Long testified that he did not remember Dr. Webb expressly stating that he was acting for Mr. Wimberly as agent but that he, Long, was dealing with Dr. Webb as Mr. Wimberly's agent and that Dr. Webb said nothing to indicate that he was not acting as Mr. Wimberly's agent. On May 5, 1943, the trade was closed, whereby Auburn Ice & Coal Company was to purchase the timber for the sum of $25,000. Dr. Webb requested that a down payment of $2,500 be made and that a check in that amount be left at the Bank of Auburn. This was done. The check bore date of May 5, 1943, in the amount of $2,500. It was drawn on the Bank of Auburn, was payable to the order of L. T. Wimberly, and was signed Auburn Ice & Coal Company, by W. L. Long, Secretary-Treasurer. It was credited to the account of L. T. Wimberly in the Bank of Auburn.

On the morning of May 7, 1943, L. T. Wimberly executed a deed wherein he conveyed the timber to Dr. W. W. Webb for a recited consideration of $15,000, receipt of which the grantor acknowledged in the deed. There was no evidence tending to support the acknowledgement of payment as expressed in the deed. The deed was signed in the presence of Dr. Webb at the house of Mr. Wimberly at or near Loachapoka. It was witnessed by two colored servants of Mr. Wimberly, John L. Willis and Nellie Willie Pitts, neither of whom were apprised of the contents of the instrument. They witnessed the instrument at the request of Mr. Wimberly. Mr. Wimberly, Dr. Webb, and the two colored servants were the only ones present at the time the deed was signed.

Later in the morning of May 7, 1943, Mr. C. T. Brown, a notary public, who resided in Opelika, accompanied Dr. Webb to the residence of Mr. Wimberly, at Dr. Webb's request. Upon entering Mr. Wimberly's room Dr. Webb said: "Here is 'Mutt' Brown to take your acknowledgement." Dr. Webb was in possession of the deed and a duplicate thereof which bore the signature of Mr. Wimberly. Brown did not read the deed nor was it read to Mr. Wimberly while Brown was present. Brown merely asked Mr. Wimberly if the signature appearing on the deed was his and if he knew what he had signed. Mr. Wimberly answered both questions in the affirmative. Brown, Dr. Webb and Mr. Wimberly were the only ones present at the time the acknowledgement was taken. After the acknowledgement was taken Brown and Dr. Webb returned to Opelika, arriving there at about 11:30 A. M.

At about 2:30 P. M. of the same day Dr. Webb and his wife, Mrs. Eloise B. Webb, arrived at Brown's office in Opelika, on which occasion Brown took their acknowledgement to a deed conveying the timber to the Auburn Ice & Coal Company for a consideration of $25,000.

The deed from Mr. Wimberly to Dr. Webb appears to have been recorded before the deed from Dr. Webb and wife to the Auburn Ice & Coal Company was executed. The deed from Webb to the Auburn Ice & Coal Company was filed for record on May 12, 1943.

According to W. L. Long, who was in charge of the timber deal in so far as the Auburn Ice & Coal Company was concerned, he did not know that the timber was to be conveyed to his company by deed from Dr. W. W. Webb rather than from L. T. Wimberly until he was told to make the checks payable to Dr. Webb. Payment for the timber was made by two checks, in both of which Dr. Webb was named as payee. Both checks were dated May 8, 1943, and were signed Auburn Ice & Coal Company, by W. L. Long, Secretary-Treasurer. One check was in the amount of $15,000 and was drawn on the Bank of Auburn. The other check was for $7,500 and was drawn on the First National Bank of Auburn. Both bear the endorsement "W. W. Webb" and show that they were paid on May 17, 1943, the day before Mr. Wimberly died, showing that they were held by Dr. Webb for nine days. On May 17, 1943, Dr. Webb made a deposit of $15,-000 to the credit of his personal account at

the Bank of Auburn. He made no withdrawals from this account until December 16, 1943. On May 17, 1943, Dr. Webb opened a personal account at the First National Bank of Auburn, making a deposit at that time in the amount of $7,500. He made no withdrawal from this account. It is admitted that the said $22,500 was never paid to Mr. Wimberly or credited to his estate.

As before indicated, the deed from Wimberly to Dr. Webb recites that the consideration of $15,000 was paid. There was no evidence introduced by the administratrix of Dr. Webb's estate tending to show such payment, nor was there any direct evidence tending to prove nonpayment. In this state of the record appellee insists that we must hold that the $15,000 was paid by Dr. Webb to the grantor. This contention is based on the rule that a recital in a deed that the consideration expressed therein was paid is prima facie evidence of payment, casting the burden of proof on those challenging the validity of the deed to show to the contrary. But such rule is not here applicable. The presumption of undue influence present here placed upon the administratrix the burden of showing that the transaction was fair, just, and equitable in every respect. To do so it was incumbent upon her to show that the $15,000 was actually paid. We think this conclusion finds support in the following cases: Dickinson v. Bradford, 59 Ala. 581, 31 Am.Rep. 23; Payne v. Powe, 212 Ala. 676, 103 So. 877. Moreover, Mrs. Eloise B. Webb, as administratrix of Dr. Webb's estate, had in her possession the documentary evidence from which such payment could have been shown if it was made. She was in possession of the records and bank statements not only of her deceased husband, Dr. Webb, but of Mr. Wimberly, which had come into Dr. Webb's possession while he served as executor of the Wimberly will and estate. There being no evidence in the record tending to show payment of the said $15,000, the conveyance of the timber to Dr. Webb must be regarded as a gift pure and simple.

Certain it is that there is nothing in the circumstances connected with the execution of the deed from Wimberly to Dr. Webb which in any way tends to show that the transaction was fair, just, and equitable in every respect. On the contrary, the circumstances and events surrounding the execution of that deed clearly give rise to a strong inference of undue influence.

Frequently in cases where confidential relations are shown to exist and the grantee or donee is the dominant spirit, the grantee or donee attempts to repel the presumption of undue influence by showing by satisfactory evidence that the grantor had competent and independent advice. Hutcheson v. Bibb et al., supra; Nelson v. Brown, 164 Ala. 397, 51 So. 360, 137 Am.St.Rep. 61. There is no evidence that competent and independent advice was given Mr. Wimberly in regard to the conveyance of the timber to Dr. Webb. At the time he signed the deed no one was present except himself, Dr. Webb, and the two colored servants. Aside from the fact that it affirmatively appears from the examination of the servants that neither of them were competent to give advice on such a matter, it also affirmatively appears that neither of them even knew the nature of the instrument which Mr. Wimberly signed. At the time Mr. Brown took Mr. Wimberly's acknowledgement, no one else was present except Dr. Webb. Mr. Brown had never read the instrument. He did not know its contents. It was not read to Mr. Wimberly in his presence. Under such circumstances, he was in no position to give advice to Mr. Wimberly.

Mr. Brown, the notary public, did testify that Mr. Wimberly said he signed the deed and knew what he had signed. However, this falls far short of the requirement of the law in discharging the burden of proof cast on the administratrix of Dr. Webb's estate to repel the presumption of undue influence. This testimony shows no more than that the deceased was informed of the contents of the paper, but knowledge of the contents is insufficient to repel the imputation that he was acting under the dominant spirit and controlling influence of the grantee, who was his trusted business agent. McQueen v. Wilson et al., 131 Ala. 606, 31 So. 94. In this connection we quote from the case of Couch et al. v.

Couch et al., 148 Ala. 332, 42 So. 624, 625, as follows:

"If it be urged that the donor by declarations manifested an understanding of his act and approved the transaction, yet it does not appear there was a severance of the confidential relation by the interposition of competent advice to the weaker party by a disinterested person. As Lord Eldon said, in Huguenin v. Baseley, 14 Ves. 300, the question was, not whether the party knew what he was doing, had done, or proposed to do, but how the intention was produced."

In transactions inter vivos, it is not always necessary to show independent advice when confidential relations exist and the grantee or donee is the dominant spirit, though the burden is on the grantee or donee to do so or to show by other evidence which satisfies the judicial conscience that the deed was the voluntary and well-understood act of the grantor's mind, and was fair and just. Scott v. Hardyman, 218 Ala. 515, 119 So. 224.

The administratrix of Dr. Webb's estate sought to explain the execution of the timber deed by Mr. Wimberly to her deceased husband in two ways: First, that the deed, although it was not executed until May 7, 1943, carried out an intention theretofore expressed by Mr. Wimberly that he was going to sell the timber to Dr. Webb for $15,000; second, that the timber was deeded to Dr. Webb because he had declined an offer of a well-paying position which would have required him to discontinue looking after Mr. Wimberly's business interests and that he continued to serve in that capacity.

It is insisted by appellee, the administratrix of Dr. Webb's estate, that the testimony of witnesses James Ray and Robert Ward clearly shows that several months prior to the day on which the timber deed was executed by Mr. Wimberly to Dr. Webb that Mr. Wimberly had stated that he either had sold or was going to sell the timber to Dr. Webb for $15,000.

We do not think that their testimony clearly shows that Mr. Wimberly made any such statement. Ray testified that he was in the lumber business and that sometime in the latter part of 1942 or the early part of 1943 (he thought it was after Christmas, 1942,) accompanied by his father-in-law, Robert Ward, he contacted Mr. Wimberly relative to the purchase of the timber here involved, at which time he offered to buy it for $15,000, but that Wimberly declined to sell. The vagueness of this witness's testimony as to why Mr. Wimberly refused to sell is demonstrated by the following excerpt from his testimony:

On direct examination:

"Q. I believe you stated that Mr. Wimberly said he was either going to sell this large tract of timber to Dr. Webb for $15,000.00 or had sold it to him for $15,000.00. A. I was led to believe something to that effect but couldn't swear it. That was the impression I was left with. That was my personal impression I gained when I left, that was, if I wanted to buy the timber I would have to come to Dr. Webb if there was any further transaction. But Mr. Wimberly's exact words I couldn't say that because it has been quite a while ago you know, and I couldn't recollect those things word for word. Mr. Wimberly was a good conversationist and of course that was quite a good bit ago, and I couldn't remember the words he said."

On cross-examination:

"Q. Your testimony is that you couldn't swear what Mr. Wimberly told you on that occasion, isn't it? A. Yes, I couldn't swear to the exact words, because it has been a good while back. That is my personal opinion.

"Q. You do say that you would swear you left there with the impression that if you wanted to buy the timber you would have to see Dr. Webb? A. Yes, that was my sole impression when I left there."

Redirect examination:

"Q. You do know that Mr. Wimberly said he had either sold or was going to sell to Dr. Webb? You are not positive which of those two statements he made, but he did make one of those statements; that he was going to sell it to Dr. Webb, for $15,000.00 or that he had sold it to Dr. Webb for $15,000.00? A. Like I said before, I don't know the exact words the man said.

"Q. You don't remember the exact words? A. I was under the impression he was going to let him have it for $15,000.-00 or going to sell it to him for $15,000.00, one or the other.

"Q. Did he say it wasn't worth more than $15,000.00 to Dr. Webb. A. I wouldn't say. The only thing he told me, he said he felt that was a fair offer I made him of $15,000.00, and then he went on with this other. I was just trying to buy the timber and I couldn't buy it and left. And what the man said I had a general idea about. Yet to get on the stand and swear the exact words the man said I couldn't do it or can't recall. But I left with that impression, and I told that to Dr. Webb and several others.

"Q. In other words, you left with the impression he had sold it to Dr. Webb or was going to sell it to Dr. Webb? A. Yes, and if I wanted to buy it I would have to see Dr. Webb. That was the main thing."

Ward testified that he was present on the occasion when Ray offered Mr. Wimberly $15,000 for the timber, which offer was declined. On direct examination he testified that Mr. Wimberly said either that he had let Dr. Webb have the timber or was going to let him have it. He made no mention of any price. On cross-examination the following transpired:

"Q. He did not say that he was going to give it him, did he? A. No. I remember he said he had done let Dr. Webb have it or was going to let Dr. Webb have it. But I wouldn't say which he said. But anyway it left the impression with us that Dr. Webb had the timber and if he wanted to get the timber he had to see Dr. Webb about it.

"Q. That is the impression you got, if he wanted to buy the timber he had to see Dr. Webb about it? A. Yes.

"Q. You didn't get the impression that he was giving Dr. Webb the timber, did you? A. No. Nothing was said about that.

"Q. From what he said that he was going to let Dr. Webb have it you don't know whether he meant he was going to let Dr. Webb have it to sell for him or that he was going to give it to him, do you? A. No, he didn't say anything about that.

"Q. You don't know whether or what amount—you don't know anything about the price Dr. Webb was to pay? A. No.

"Q. You heard Mr. Ray say he was going to let him have it for $15,000.00 or had let him have it for $15,000.00; you wouldn't swear that wasn't what was said, would you, Mr. Ward? A. No. Of course, it was their conversation. I was just sitting there. There could have been a lot that I didn't catch. I was just up with Mr. Ray.

"Q. And you wouldn't say that was what he said. A. No. I understood him to say that he was going to let Dr. Webb have it or had done let him have it. I don't know which it was.

"Q. You are not positive he used those exact words, are you? A. Either one or the other, yes."

John L. Willis, the colored male servant who nursed Mr. Wimberly and who witnessed his signature to the deed to Dr. Webb, testified that a week or two prior to the date on which the deed was executed he had a conversation with Mr. Wimberly wherein Mr. Wimberly said he wanted Dr. Webb to have the "biggest portion of his property" because Dr. Webb "was the onliest one he could depend on to see after his business." The timber transaction, however, was not mentioned.

Mrs. Eloise B. Webb testified that she was present when representatives of a large estate sought to get Dr. Webb to take over the management of that estate. But there is no legal testimony showing that this offer was ever communicated to Mr. Wimberly.

This is a voluminous record, consisting of two volumes. We have read and reread the evidence as it relates to this timber transaction and the only testimony which we find that in any way casts any light upon or attempts to explain the execution of the timber deed by Wimberly to Dr. Webb is that of Ray, Ward, and Willis, which has been alluded to above.

To repeal the presumption of undue influence, it was incumbent upon the administratrix in this case to show by *clear* and *convincing* proof that her intestate, Dr. Webb, acted in perfect good faith and did not take advantage of the weak-

ness of his uncle. Couch et al. v. Couch et al., supra; Worsham v. Johnson, supra.

Such proof has not been produced. As before indicated, there was no evidence of independent advice. The testimony of Ray and Ward is far from clear and convincing and in our opinion does nothing more than show that which appears throughout the record, that Dr. Webb was handling the business affairs of Mr. Wimberly and that those who desired to purchase the timber would have to contact Dr. Webb, as the agent of Mr. Wimberly. Willis's testimony did not relate specifically to the timber transaction and the fact that Mr. Wimberly had said that he wanted Dr. Webb to have the largest portion of his property, standing alone, does not repel the presumption of undue influence and the strong inference of undue influence or unfair dealing raised by the circumstances surrounding the timber transaction.

In Waddell v. Lanier, supra, the writer of the opinion quotes from Judge Story the following expression: "And, indeed, considering the abuses which may attend any dealings of this sort between principals and agents, a doubt has been expressed whether it would not have been wiser for the law in all cases to have prohibited them; since there must always be a conflict between duty and interest on such occasions."

The rule, however, is not extended this far; but such transactions must be closely scrutinized, and the burden rests upon the agent (Dr. Webb's administratix) in a case such as this to prove that it was just, fair, and equitable in every respect. We are fully persuaded that the administratrix has not met that burden.

We hold, therefore, that the deed from Mr. Wimberly to Dr. Webb was invalid and that Mrs. Eloise B. Webb, as administratrix of the Webb estate, should have been charged in the Wimberly estate matter with the sum of $22,500 with interest thereon from May 8, 1943, the day on which the checks in that amount came into Dr. Webb's possession, as we interpret the record, to January 22, 1948, the date of the decree rendered in this court, making a total of $28,852.50. The trial court erred in holding to the contrary. We come

to this conclusion aware of the presumptions which obtain where testimony was heard ore tenus as was done in this case.

In her report for final settlement filed in the Wimberly estate matter, Mrs. Eloise B. Webb, the administratrix of Dr. Webb's estate, claimed credit for the sum of $988.-50, being the amount paid by Dr. Webb out of estate funds during the time he served as executor of the Wimberly will and estate, to Winston Smith T for certain items of building material and farm equipment and supplies, including sales tax. This sum was paid by three checks signed by W. W. Webb, as executor of the last will and testament of L. T. Wimberly. The checks were in the following amounts: $517.51, $460.53, and $10.46.

The itemized accounts introduced in evidence show that the material and supplies were charged by Winston Smith T to W. W. Webb personally and not as executor. But the administratrix of Dr. Webb's estate sought credit for such expenditures on the theory that all of the materials and supplies so purchased and paid for were used for the benefit of property owned by Mr. Wimberly prior to his death.

As to these matters the trial court decreed: "The Court is of the opinion that these items were for the benefit of the Wimberly estate, and it is, therefore, ordered, and decreed by the Court that these are proper credits on petitioners' account and report for final settlement in case No. 1107 [Wimberly estate matter], and that Contestants' claim therefor and Contestants' contest of these items of credit on said report for final settlement should be, and they are hereby denied."

However, it appears from the accounts introduced in evidence that items totaling $54.11, including sales tax, were purchased prior to the death of Mr. Wimberly. Even if it be assumed that the evidence shows that these items were used by Dr. Webb in improving the property of Mr. Wimberly during his lifetime, nevertheless Dr. Webb should have presented a claim against the Wimberly estate, as required by § 210, Title 61, Code 1940. Wright v. Menefee, 226 Ala. 55, 145 So. 315. This conclusion is not affected by the

fact that we have held that Dr. Webb was indebted to the Wimberly estate by virtue of the timber transaction discussed above. A claim against an estate, which has not been filed as required by law, is not available as a setoff against a debt owed to the estate by an executor.—Shelton's Adm'r v. St. Clair, 64 Ala. 565; Bell's Adm'r v. Andrews, 34 Ala. 538; Murdock v. Rousseau's Adm'r, 32 Ala. 611. While the cases just cited dealt with insolvent estates, we think the principle enunciated is applicable here. We hold, therefore, that the trial court erred in allowing credit to the administratrix of Dr. Webb's estate for this amount and that as administratrix of the Webb estate she should be charged with the said sum of $54.11 with interest thereon from July 12, 1943, to January 22, 1948, making a total of $68.80.

■■■■■ The evidence shows that of the total amount paid to Winston Smith T the sum of $397.60, including sales tax, was for equipment and supplies used in the cultivation of cotton. The will did not authorize the executor to conduct farming operations or to carry on the business in which the testator had been engaged. In the absence of such authorization, Dr. Webb, as executor of the Wimberly will and estate, had no authority to carry on farming operations. Steele et al. v. Steele's Adm'r, 64 Ala. 438, 38 Am.Rep. 15; Eufaula Nat. Bank v. Manassas, Ex'r, etc., 124 Ala. 379, 27 So. 258; Colvin et al. v. Owens, 22 Ala. 782; Carter v. Carter, 247 Ala. 409, 24 So.2d 759; Pearce v. Pearce, 199 Ala. 491, 74 So. 952. There is no evidence tending to show that the farm equipment and supplies, payment for which credit is sought, were used in the cultivation of crops which had been planted by Mr. Wimberly at the time of the death of the intestate. It appears that Mr. Wimberly was not farming his land himself, but was renting it and the rent was paid in cotton according to acreage involved. There is nothing to indicate that under the rental contract he was to furnish equipment and supplies. In fact, the contrary appears. Consequently the rule announced in Tayloe, Adm'r, v. Bush, 75 Ala. 432, has no application. § 236, Title 61, Code 1940. We have examined the record with care and we are unable to find that the said

farm equipment and supplies in any wise were productive of actual benefit to the estate, and since the expenditure therefor was improperly incurred, § 4, Title 58, Code 1940, has no application. We hold that the trial court erred in allowing the administratrix of Dr. Webb's estate credit for the aforesaid sum of $397.60 expended out of estate funds by Dr. Webb for the purchase of said farm equipment and supplies, and that the administratrix of the estate of Dr. Webb should be charged with that amount, with interest thereon from July 12, 1943, to January 22, 1948, making a total of $505.61.

■■■■■ The other items purchased by Dr. Webb from Winston Smith T were in the nature of building materials. There was evidence to the effect that a large portion of the property owned by Mr. Wimberly was in a bad state of repair and there was evidence which justified the trial court in finding that the building materials purchased from Winston Smith T was used in making necessary repairs of a permanent nature to the property. We think the administratrix was properly credited with the sum of $536.79, which her intestate paid out of the Wimberly estate funds in purchasing the building materials and used as above indicated. Henderson v. Simmons, 33 Ala. 291, 70 Am.Dec. 590; Miller et al. v. Phillips, 235 Ala. 298, 178 So. 531; § 4, Title 58, Code 1940.

In both proceedings, that is, in the Wimberly estate matter by motion to charge and in the Webb estate matter by claim filed, Mrs. Eloise B. Webb, the administratrix of Dr. Webb's estate, was sought to be charged with the rental value of certain pieces of property which had belonged to Mr. L. T. Wimberly. Interest on the rent was claimed also. The trial court charged the administratrix with the rent but did not allow interest. It is here insisted that interest should have been allowed and that the trial court erred in not allowing it.

■■■■■ There is no cross appeal or cross assignments of error. Hence, the correctness of the action of the trial court in charging the administratrix with the rent is not before us. Having found that the rent was chargeable to the administratrix, interest thereon should have been allowed.

In Harrison's Adm'r v. Harrison's Distributees, 39 Ala. 489, 510, it was held: "It is settled in this State that in taking an account like the present one, interest is chargeable on the value of the rents and hires, from the date of their maturity." The rule is stated in Hinson v. Williamson, 74 Ala. 180, 197, as follows: "Where rents are chargeable, interest will be allowed from maturity; the general rule being, that interest is always to be allowed, as a legitimate fruit of principal."

Two pieces of the property were farm property. Rent was allowed for the entire year 1944. Dr. W. W. Webb, according to the evidence, planted crops on this property in the spring of 1944. He died on May 26, 1944. Thereafter the crops were harvested by an agent who had been employed by Dr. Webb's administratrix to assist her in winding up her intestate's varied business interests. Proceeds received from the sale of such crops went to Dr. Webb's administratrix for the benefit of his estate, not to the Wimberly estate. The decree of the trial court did not take into consideration the fact that Dr. Webb ceased to be executor of the Wimberly will and estate on the date of his death, May 26, 1944. Unquestionably his estate was liable for rental value of the lands of Mr. Wimberly which he used for his personal advantage while he was executor. Henderson v. Simmons, supra. This is true although he was a tenant in common. Kennedy v. Parks, 217 Ala. 323, 116 So. 161; Miller et al. v. Phillips, supra. There was evidence which could have justified a finding that Mrs. Eloise B. Webb agreed to pay reasonable rent out of the funds of the Webb estate for this property for the remainder of 1944 in order to cultivate and harvest the crops growing thereon. As such administratrix, she had the right to complete and gather the crops. § 236, Title 61, Code 1940. Even if it be assumed that the administratrix of the Webb estate could only be charged in the Wimberly estate matter with the rent of the land until the death of her intestate, nevertheless there was evidence which authorized allowance of the claim for the remainder of the year in the Webb estate matter. The net result is the

same, in view of the agreement to try these two matters together and that only one decree be rendered.

The total amount of the rent charged to the administratrix of the Webb estate for the use of the farm property was $238. By statute this rent became due November 1, 1944. § 16, Title 31, Code 1940. The interest rate to be charged is 6%. § 304, Title 61, Code 1940; § 60, Title 9, Code 1940. After the decree was rendered in this cause, Mrs. Eloise B. Webb, as administratrix of the estate of W. W. Webb, filed her check with the register of the circuit court of Lee County, payable to Grady Webb, as executor of the last will of L. T. Wimberly, deceased, in the sum of, to wit, $17,493.76. As before shown, this was the amount found to be due by Mrs. Webb, as administratrix, to the Wimberly estate after allowing her credit for executor's fees, counsel and guardian ad litem fees. This $17,493.76 included the amount found to be due for rent. There was a stipulation entered into between Mrs. Eloise B. Webb, as administratrix of W. W. Webb, deceased, and Grady Webb, as succeeding executor of the Wimberly will, which contained the following provision: "Now, therefore, in consideration of the delivery of such check as aforesaid, it is agreed between Grady Webb, as executor of the last will of L. T. Wimberly, deceased, and Eloise B. Webb, as administratrix of the estate of W. W. Webb, deceased, that no interest shall accrue or be charged upon or against the said amount of said check." In view of this stipulation, we think interest on the farm property should be calculated from the date of its maturity, November 1, 1944, to the date on which the above-referred-to stipulation was entered into, namely, May 15, 1946. We hold, therefore, that Mrs. Eloise B. Webb, as administratrix of the estate of W. W. Webb, deceased, is chargeable with the sum of $21.-97, interest on $238 at 6% from November 1, 1944, to May 15, 1946.

The other items of rent charged to the administratrix of Dr. W. W. Webb's estate related to business property located in Opelika. As to one piece of the business property, referred to as the Avenue B property, the sum of $900 was charged as

rent for the use of the property from May 26, 1943, to August 26, 1944, a period of fifteen months. The same situation exists as to the business property as was present in the case of the farm property. The period for which rent was charged extended beyond the date of the death of Dr. Webb, but there was evidence which would support a finding of the trial court that Mrs. Eloise B. Webb agreed as administratrix to pay a reasonable rent for the use of this piece of property until the personal property which had belonged to her husband and which was stored in the building could be sold. As to this extended period, the court no doubt found that rent was properly chargeable in the Webb estate matter. The right of the administratrix to so bind the estate of her husband was not questioned. As before indicated, that question is not presented here.

While the rent for the use of this piece of property was charged in the decree in a lump sum, the evidence showed the reasonable rental value of the property by the month, and rent on business property is generally payable in that manner. The reasonable monthly rental value of this property, based on the total rental value as found by the trial court, was $60 a month. The trial court found that Dr. Webb's possession began on May 26, 1943, and we accept that date for the purpose of computing the amount of interest due. We hold that on June 26, 1943, Dr. Webb owed the sum of $60 for the use of the business property from May 26, 1943, to June 26, 1943, and that he owed $60 on the 26th day of each month thereafter through August 26, 1944. The stipulation of counsel heretofore referred to likewise applies in this instance. We hold that the administratrix of the Webb estate is chargeable with the sum of $124.35 interest, being the total amount of interest due on all monthly payments from the date each monthly payment became due until May 15, 1946.

As to the other piece of business property, the trial court charged the administratrix with the sum of $212.50 for the use of the property for a seventeen-month period beginning May 26, 1943. This is a rental value of approximately $18.32 a month, which we hold was payable in the

same manner as in the case of the other piece of business property. We conclude, therefore, that the administratrix is chargeable with the sum of $37.91 interest on the rental value of this piece of property, computed in the same manner as on the other piece of business property.

Item 26 of both the motion to charge in the Wimberly estate matter and the claim filed in the Webb estate matter was for $850 with interest "for reasonable use or rent of Lyman Building, Opelika, Alabama, by W. W. Webb or his estate, 17 months, from May 26, 1943, to October 26, 1944." The motion and claim were disallowed by the trial court as to both principal and interest. Such action is here asserted as error.

 It is not contended that there is any recognized or statutory necessity for the executor to have rented this property. The motion to charge and the claim filed as to this item were predicated on the use and occupancy of the property by Dr. Webb and his administratrix. While there is evidence to that effect, there is also evidence which we think justified the trial court in finding to the contrary. In view of the presumption which prevails, since the testimony was taken ore tenus, we cannot say that the trial court erred in disallowing the claim and motion to charge as to this item.

The final decree in this case, among other things, provided:

"It is further ordered, adjudged and decreed by the Court that the compensation of Eloise B. Webb as administratrix of the estate of W. W. Webb, deceased, for services rendered by her decedent, W. W. Webb, as executor of the last will and testament of L. T. Wimberly, deceased, be and the same is hereby fixed and allowed in the amount of $2500.00."

It was also provided in the decree that the administratrix of the Webb estate could credit the amount of such fees against the amount charged against her as administratrix and to be paid to Grady Webb, as succeeding executor of the Wimberly will and estate.

Appellants insist that Dr. W. W. Webb rendered no service to the Wimberly estate, but that his actions as executor were

so detrimental to the estate that he forfeited all right to the payment of any compensation out of the funds of the Wimberly estate.

Although Dr. Webb served as executor of the Wimberly will and estate for almost a year, he kept no Wimberly estate records whatsoever. There was no effort made by him to keep an account of receipts and disbursements. It is clear from this transcript that his failure to do so has rendered a proper accounting on the part of his administratrix most difficult.

According to the report for final settlement filed by Mrs. Eloise B. Webb, as administratrix of the estate of Dr. W. W. Webb, in the Wimberly estate matter, the sum of $58,205.93, belonging to the Wimberly estate, was on deposit in various banks on the date Dr. Webb qualified as executor. Thereafter, the report charges Dr. Webb with having received the further sum of $33,178.35, making a total sum of $91,384.28 received by Dr. Webb as executor. Disbursements by Dr. Webb, as executor, for which credit was sought amounted to only $12,174.90. Therefore, at the time of his death Dr. Webb should have had to his credit as executor of the Wimberly will and estate the sum of $79,209.38. Instead there was the sum of $22,304.03.

This deficit is shown to have occurred in part in the following manner. On June 21, 1943, Dr. Webb deposited $5,000 to his credit as executor of the Wimberly estate in each of three Montgomery banks. These deposits were made by checks drawn on his accounts as executor in Opelika banks. Thereafter, on August 4, 1943, he made additional deposits in the Montgomery banks. These deposits consisted of checks drawn on his accounts as executor in other banks, two checks in payment of life insurance on L. T. Wimberly, and a check in payment of rent on Wimberly property. After these last-mentioned deposits were made, he had to his credit as executor in the First National Bank of Montgomery, $18,948.33; in the Union Bank and Trust Company, $19,129; and in the Alabama National Bank, $10,248. On August 26, 1943, he withdrew from his account, as executor, at the First National Bank of Montgomery the sum of $17,892, which he deposited to his personal credit at the same bank. On the same day he withdrew from his account, as executor, at the Alabama National Bank the sum of $8,248, which he deposited in that bank to his individual account. On the following day, August 27, 1943, he withdrew from his account, as executor, at the Union Bank and Trust Company the sum of $17,020, which went to the credit of his personal account. Thus, on August 26 and 27, 1943, he transferred from his accounts as executor to his personal credit the sum of $43,160. There was no record of this transfer made by Dr. Webb. The succeeding executor, Grady Webb, learned of the transactions only after calling on many banks in east Alabama. Dr. Webb's administratrix later paid the said sum of $43,160 to the succeeding executor.

Dr. Webb, while serving as executor, paid to the estate $1,000 for a certificate of eighty shares of stock in the Opelika National Bank, which the evidence shows was worth at least $2,400. He had the certificate transferred from the name of L. T. Wimberly to his own name.

A loan which had been made by Mr. L. T. Wimberly was secured by a pledge of eighty shares of People's Building and Loan stock. Dr. Webb took the stock and satisfied the loan. He then sold the stock for $3,000 and on March 24, 1944, deposited the money to his individual account at the Ensley branch of the First National Bank of Birmingham. There was no record made by him as to this transaction. The facts connected with this defalcation came to light when the succeeding executor made inquiry at the bank concerning funds of the Wimberly estate.

Other loans which had been made by L. T. Wimberly, amounting to more than $3,500, were collected by Dr. Webb; the mortgages securing the loans were satisfied by him but none of the money was credited to the estate, but was placed to the credit of Dr. Webb's personal bank accounts. He kept no record of such transactions.

Numerous items of rent due on Wimberly property were collected by Dr. Webb while he served as executor. Practically

all the money so collected he deposited to his individual bank accounts. There were only about four rental collections which were deposited in estate funds and in one or two instances a portion of the amount collected was deposited to his bank account as executor, with the remainder going to his individual accounts. He kept no records showing such transactions.

The foregoing instances are but fragments of the mosaic which pictures the reprehensible conduct of Dr. Webb as executor of his deceased uncle's estate.

This court long ago announced the rule that personal representatives fill a fiduciary relation which is indispensable in our judicial system and that the law does not visit upon them severer intendments than are indulged against agents generally. Gould v. Hayes et al., 19 Ala. 438.

In a number of cases it has been said that reasonable compensation will not be refused to executors and administrators, except in cases of willful default or gross negligence, by which loss to the estate has been caused. Powell et al. v. Powell, 10 Ala. 900, 914; Gould v. Hayes et al., supra; Pearson and wife v. Darrington, 32 Ala. 227, 271; Smith v. Kennard's Executor, 38 Ala. 695; Ivey et al. v. Coleman, Ex'r, 42 Ala. 409, 418; Alexander v. Bates et al., 127 Ala. 328, 28 So. 415.

Counsel who represented the administratrix of Dr. Webb's estate in court below, and who appear for her here, did not represent nor were they in any way connected with Dr. Webb while he served as executor of the estate of L. T. Wimberly, deceased. They concede that as executor Dr. Webb committed what they term "certain acts of impropriety." This is a very charitable description of his conduct. But they insist that such conduct has not resulted in any loss to the estate and that, consequently, under the rule announced in the cases above cited, the trial court correctly allowed the sum of $2,500 as compensation for the services rendered by Dr. Webb, as executor.

It is true that in the instances which we have enumerated the funds which were misappropriated were recovered and were either accounted for by the administratrix or charged to her in this proceeding. Such recovery is due to a large extent to the industry of Grady Webb, the succeeding executor of the Wimberly will and estate. But in view of the manner in which Dr. Webb conducted the affairs of the Wimberly estate, it cannot be said that all of his misappropriations have been accounted for so as to conclude that his conduct did not result in loss to the estate. Moreover, considerable delay and expense to the estate has been occasioned by his actions. Nor does it matter that his administratrix has been charged with interest on the estate funds which he placed to his own credit.

To compensate one for such flagrant disregard of duty would be in disregard of what is just. The executor here did more than fail to keep accurate records. He seems to have had no apprehension of his moral and legal duties and responsibilities.

Under such circumstances a personal representative is not entitled to compensation. Reason for compensation is to repay a personal representative for trouble, risk, and the responsibility involved, and to reward him for the fidelity with which he discharges his trust. If the representative is unfaithful, as here, and fails in his fidelity, as here, he forfeits the right to compensation. Compensation is due to him who serves, not to him who destroys. We conclude that it was error to credit the administratrix of Dr. Webb's estate with any amount as compensation to her intestate as executor of the Wimberly will and estate.

In her petition and report for final settlement, Mrs. Eloise B. Webb prayed that the sum of $2,500 be allowed as a reasonable fee to her attorneys who had assisted in preparing the report for final settlement, and that such sum be made a charge against the Wimberly estate. By amendment she sought to have the attorneys' fee fixed at $5,000. By further amendment the figure was raised to $6,500. In this connection the trial court decreed "that the sum of $5,000.00 be and the same is hereby fixed and allowed to Messrs. Denson & Denson, solicitors of record for Eloise B. Webb as a 'ministratrix of the estate of W. W. Webb, deceased, for their services ren-

dered in her behalf in making this her final settlement of the administration by her decedent, W. W. Webb as executor of the last will and testament of L. T. Wimberly, ·deceased."

■ Subject to the general require-·ments of good faith and reasonable prudence, the personal representative may employ an attorney for advice and representation in legal matters and in management of an estate and may pay for and be allowed credit for such reasonable attorney's fees on settlement of the estate. Stumpf v. Wiles, 235 Ala. 317, 179 So. 201, and cases there cited.

■ We think this rule applies also to an administratrix of a deceased executor in connection with making final settlement of her intestate's administration.

But an estate should not be charged with payment of attorneys for services rendered the personal representative of a deceased executor, which services have been occasioned by the gross negligence, willful default and conversions of the deceased executor.

If Dr. Webb had kept proper books and records and had accounted for the funds of the estate which came into his hands in his fiduciary capacity, the preparation of the report for final settlement would have been a comparatively simple matter and this litigation would have been avoided.

We do not question the fact that counsel representing the administratrix of Dr. Webb have expended considerable time and effort in preparing the report for final settlement in addition to their services in connection with the defense of that report. But again we call attention to the fact that it was the dereliction on the part of Dr. Webb which made that necessary.

This is not the final settlement of the Wimberly estate. Considerable expense, including attorneys' fees, has been incurred by the present executor of that estate in protecting the estate in these proceedings.

■ In view of these circumstances, we think that $2,500 is a fair and just amount to charge against the Wimberly estate for legal services rendered to Mrs. Eloise B. Webb, as administratrix of W. W. Webb, in making her final settlement

of the administration of her intestate, as the executor of the Wimberly will and estate. § 63, Title 46, Code 1940; Bidwell v. Johnson et al., 191 Ala. 195, 67 So. 985.

The administratrix of Dr. Webb's estate sought to be credited with the payment of the sum of $750, which she had made to an accountant. There was an objection to the allowance of credit for such payment, but the trial court allowed it. In Noble et al., Ex'rs, v. Jackson, 132 Ala. 230, 31 So. 450, it was held that the expense of employing the bookkeeper was correctly disallowed as credit to executors where the accounts necessary to be kept in the course of the administration involved little more than statements of receipts and disbursements. But in Birmingham Trust & Savings Co. v. Hightower et al., 233 Ala. 39, 169 So. 878, where services of an accountant proved to be productive of actual benefit to the estate, it was held that the executor should have been allowed credit for the amount paid for the accountant's services. In so holding the court applied the provisions of § 4, Title 58, Code 1940.

■ Unquestionably the services rendered by the accountant in this case were beneficial to the Wimberly estate. It is obvious that expert services in this field were required after the death of Dr. Webb and the resulting confusion brought about by his failure to keep any proper books and records. Although the necessity for such services was unquestionably created by the incompetent manner in which deceased executor performed his services, nevertheless we feel that the trial court correctly allowed credit for this expenditure. The accountant worked not only with the administratrix of Dr. Webb's estate, but with Grady Webb, the succeeding executor of the Wimberly will and estate, and with counsel representing both estates. We have held that no compensation should be awarded the executor for his alleged services and his administratrix has been charged with numerous items of interest due to her intestate's failure to properly account for funds of the Wimberly estate. These items are greatly in excess of the amount paid to the accountant and, as before indicated, the services rendered by him not only were

beneficial to the estate but were entirely necessary.

In addition to his widow, Mrs. Eloise B. Webb, Dr. W. W. Webb was survived by two children, one of whom was a minor five years of age. A practicing attorney of the Lee County bar was appointed guardian ad litem to represent the interest of this minor. The trial court allowed the guardian ad litem the sum of $250 for legal services rendered in behalf of this minor and provided that the administratrix should receive credit for the amount of this fee against the amount theretofore fixed by the court to be paid by the administratrix to Grady Webb, as succeeding executor of the last will and testament of L. T. Wimberly, deceased. The fee fixed by the trial court was not excessive and we think it was proper that it be paid out of the funds of the Wimberly estate. § 297, Title 61, Code 1940; § 180, Title 7, Code 1940.

The original report for final settlement filed by the administratrix of Dr. Webb's estate was subsequently amended so as to claim credit for disbursements in the amount of $342.38, for which credit had not been sought in the original report. The trial court allowed credit for these items and there appears to have been no contest thereof. We think this answers the contention of counsel for appellants that the judgment rendered by the trial court was deficient in the sum of $342.28.

We do not feel inclined to disturb the manner in which the trial court apportioned costs incurred below.

It results from what has been said the decree of the trial court must be affirmed in part and in part reversed and a decree here rendered in favor of Grady Webb, as succeeding executor of the will and estate of L. T. Wimberly, deceased, against Mrs. Eloise B. Webb, as administratrix of the estate of W. W. Webb, deceased, in the sum of $34,611.14.

The costs of this appeal will be taxed against the appellee.

Affirmed in part and in part reversed and rendered.

GARDNER, C. J. and FOSTER and STAKELY, JJ., concur.