The issue presented by this appeal concerns the ownership of certain funds deposited in a savings account at First Federal Savings Loan Association of Bessemer in the names of Margaret Colley and R.A. Coats, as joint tenants with right of survivorship.
Coats claimed title to the funds following the death of Mrs. Colley by virtue of the survivorship provision of the account. McEniry claimed title as executor of Mrs. Colley's estate contending that Mrs. Colley, a 92-year-old widow, was senile at the time the account was established with her funds, and that a confidential relationship between the parties existed and that the gift from Mrs. Colley to Coats was a result of undue influence.
Coats filed a bill for declaratory judgment in his capacity as administrator ad colligendum. Subsequently, McEniry, as executor, was substituted as a defendant. He then filed a cross bill alleging the gift was the result of the senility of Mrs. Colley or the undue influence exercised by Coats, Executive Vice President of First Federal, over Mrs. Colley.
After a hearing ore tenus, the trial court ruled in favor of Coats and against McEniry, finding there was no undue influence exercised by Coats and that a valid gift was made by Mrs. Colley to Coats, pursuant to Tit. 5, § 255 (4), Recompiled Code 1958 [unofficial].
Appellant McEniry's contentions for reversal are twofold, albeit related. First, he contends that the trial court erred in deciding that Mrs. Colley made a bona fide gift inter vivos to Coats because the evidence was undisputed that a confidential relationship *Page 570 
existed between them and no evidence was introduced to rebut the legal presumption that the gift was the result of undue influence. Second, he contends that the trial court erred in holding Coats to be the owner of the account by virtue of the provisions of Tit. 5, § 255 (4) because that provision was never intended to repeal decisional law with respect to undue unfluence arising from confidential relationships.
Coats contends, by virtue of Tit. 5, § 255 (4), that the survivor of a joint account is relieved of the burden of establishing a gift inter vivos so that the survivor is entitled to the account proceeds. Moreover, Coats maintains that the trial judge's judgment should not be disturbed unless it is plainly and palpably contrary to the weight of the evidence.
We will proceed to deal with these contentions.
Tit. 5, § 255 (4), as found in the unofficial 1958 Recompiled Code, states:
 "§ 255 (4). Deposit in names of two persons, payable to either, or payable to survivor; title to deposit upon death of either. — When a deposit has been made, or shall hereafter be made, in any savings and loan association in this state in the names of two persons, payable to either of such persons, or payable to the survivor of them, the said deposit shall, upon the death of either of said persons, become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited where the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposit there was any intention on the part of the persons making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons, during their joint lives, had the right to withdraw such deposit, and irrespective of whether or not there was any delivery of any account book or savings account book by the person making such deposit to the other of such persons. This section will also apply where a deposit is made in the names of more than two persons where there is a provision for survivorship. Nothing in this section shall be construed to prohibit the person making such deposits from withdrawing or collecting the same during his lifetime, nor shall the fact that such person had the right to withdraw or collect said deposit during his lifetime operate to defeat the rights herein provided for the person, or persons, surviving such depositor. (1967, p. 575, § 3, appvd. Aug. 14, 1967.)"
Very recently in Street v. Hilburn, Ala., 326 So.2d 724
[1976] (per Almon, J.), we had an opportunity to pass on the meaning of this statute. We held that the statute "is clear in its meaning and intent that the survivor of a joint bank account is entitled to the proceeds." We rejected the contention that it must be shown that the donor intended to make a gift inter vivos. We quoted with approval from the New Hampshire case of In re Wszolek Estate, 112 N.H. 310,295 A.2d 444 (1972) which held, with respect to a statute very similar to ours, that the statute simply "has relieved the surviving joint tenant of the burden of establishing a gift inter vivos."
However, Street had nothing to say with respect to, nor did it deal with, the question raised in the case at bar that the gift of the account was the result of undue influence. This question was not raised in Street nor has it been heretofore raised in our Court with respect to the provisions of Tit. 5, § 255 (4).
Thus, there is nothing in Street which affects our pre-existing case law to the effect that:
 "The law presumes the exercise of undue influence in transactions inter vivos where confidential relations exist between the parties, and puts upon the donee or grantee, when shown to be the *Page 571 
dominant party in the relation, the burden of repelling the presumption by competent and satisfactory evidence. [Citations omitted.]"
* * * * * *
 "But for such a presumption to be raised the evidence must show clearly and satisfactorily: (1) That a confidential relation existed between the grantor and grantee; (2) that the grantee was the dominant spirit. Wooddy v. Matthews, 194 Ala. 390, 69 So. 607."
Webb v. Webb, 250 Ala. 194, 203-4, 33 So.2d 909, 915-16 (1948).
Mrs. Margaret Colley, a 92-year-old widow, had no surviving blood relatives. She had poor eyesight. It was extremely difficult for her to write. She relied on employees in her lawyer Tom McEniry's office to help her make out checks and pay bills. She had made a will dividing her estate between three charities, St. Thomas Home-on-the-Hill, St. Aloysius Catholic Church and Alabama Sight Conservation Association. Her banker, Walter Berry cashed her dividend and social security checks and delivered money to her at her home. After he was killed in an accident, she asked Coats, Executive Vice President of First Federal Savings Loan Association of Bessemer, where she had a savings account, to help her as Mr. Berry had. He agreed. He did. Although the savings and loan association employees ran errands for her and they sometimes drove her to her home from town, she was, more or less, self-sufficient, living alone at her home until the late 60's. In July, 1968, when she became ill, she asked a Mrs. Jessie Colley Evans, relative of her deceased husband, to help her. She put Mrs. Colley in a nursing home and put her name on Mrs. Colley's checking account in order to pay the latter's bills. She accompanied Mrs. Colley to First Federal, with several of Mrs. Colley's savings and loan passbooks, at the suggestion of a banker. Mrs. Evans, at Mrs. Colley's request, turned over the passbooks to Mr. Coats to have interest credited to her accounts. This was the last time Mrs. Colley had physical possession of the passbooks. There were three accounts with: City Federal Savings Loan Association; First Federal Savings Loan of Alabama; and First Federal of Bessemer. They totaled some $31,500. In the spring of 1969, Mrs. Colley was released from the nursing home. She had been unhappy there and wanted to return home. Mr. Coats then began seeing her on a regular basis. On May 7, 1969, Mrs. Colley sat with Coats at his desk and signed signature cards transferring her individual account at Coats' institution to a joint survivorship account with Coats. The account then stood at $11,544.72. Coats went to the other two institutions, obtained signature cards changing those accounts to joint survivorship, took them to Mrs. Colley's home where she signed them in his presence. He returned them to the other two savings and loan associations. Coats retained physical possession of the passbooks. Without consulting Mrs. Colley, on September 23, 1969, Coats closed the two Birmingham accounts and deposited the proceeds in the account at his savings and loan. The balance of the account was then $31,654.78. From that time on, Coats deposited dividend checks to his personal checking account, and pledged the joint account as security for a personal loan. On January 24, 1970, Mrs. Colley was admitted to a nursing home where she died May 23, 1970. Four days later, Coats withdrew the balance of the account. It stood at $29,342.51.
The relationship of principal and agent is one of a confidential relationship. Waddell v. Lanier, 62 Ala. 347
(1878); Webb v. Webb, supra. The evidence is clear and convincing that when the accounts belonging to Mrs. Colley were placed in a joint account with Mr. Coats that the relationship of principal and agent inured, and, as such, that the latter looked after the former's business and personal affairs. *Page 572 
It is, moreover, clear that Mr. Coats was the dominant spirit in the transactions. He was Vice President of First Federal, where he had been an officer and board member for nearly forty years. He hardly knew Mrs. Colley until she asked him to help her after the death of her banker, Mr. Berry, in an automobile accident in the early 60's. Mrs. Colley was a 92-year-old widow, easily influenced, and suffering the vicissitudes of old age, albeit in quite remarkable physical condition for one who had reached such an advanced age. She relied almost entirely on Mr. Coats' advice and suggestions.
It is thus that we say Coats has failed to carry the legal burden placed upon him by our law to repell the presumption of undue influence. It was held in Webb, supra:
 "In transactions inter vivos, it is not always necessary to show independent advice when confidential relations exist and the grantee or donee is the dominant spirit, though the burden is on the grantee or donee to do so or to show by other evidence which satisfies the judicial conscience that the deed was the voluntary and well-understood act of the grantor's mind, and was fair and just. Scott v. Hardyman, 218 Ala. 515, 119 So. 224.
Other courts have reached like results.
In a quite similar case, In re Estate of Dzierski, 449 Pa. 285, 296 A.2d 716 (1972) the Supreme Court of Pennsylvania affirmed a lower court which had found that undue influence had been practiced on the deceased by his daughter. For that reason, it held invalid her claim as the sole survivor to a joint bank account. The Supreme Court held:
 ". . . Neither of these two general principles (i.e., the prima facie creation of a gift and the burden of proof placed on the presumed donor, or his representative, to show no gift) applies, however, `where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it.' [Citation omitted.] The presence of a confidential relationship sufficient to shift the burden of proof to the alleged donee does not turn on the existence of any specific association of parties."
* * * * * *
 ". . . We do not hesitate in concluding that on these facts the relationship and circumstances of the parties was such as to require Mrs. Maleski [the daughter] to carry the burden of proof, a burden she chose not to meet."
In Ward v. Marine Nat'l Bank, 38 N.J. 132, 183 A.2d 60 (1962) a summary judgment in favor of the survivor for the proceeds of a joint account was reversed for the trial of the allegations of fraud and mistake in opening the accounts. We note with approval the following observation of the Supreme Court of New Jersey in the opinion:
 ". . . Defenses of fraud, duress, undue influence or mistake are available against any property disposition by gift or will and nothing in this statute requires a limitation on their availability in the instant case. . . ."
See also 10 Am.Jr.2d Banks, § 370, p. 333, § 372, pp. 335-336.
It is thus that we hold, in the instant case, that the confidential relationship having been shown to exist, donee Coats has failed to carry his burden of repelling the presumption of undue influence, by competent and satisfactory evidence.
REVERSED AND REMANDED.
HEFLIN, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur. *Page 573