PER CURIAM.
Gabriella C. Bates died testate on May 3, 1981. Her will was admitted to probate, and letters testamentary were issued to co-executors, Norborne C. Stone and the testatrix’s daughter, Emily B. Gomila, on October 7, 1981, by the Probate Court of Baldwin County.
The principal beneficiaries under the will are the testatrix’s children, Emily B. Gomi-la and Gabriella B. Ingalls, and the three children of her deceased son, George Lu-den Bates, hereinafter referred to as the Bates grandchildren. Under provisions of her will Gabriella C. Bates granted her co-executors broad discretionary powers to administer her estate. The will provided as follows:
“I do hereby nominate, constitute and appoint my daughter, EMILY B. GOMI-LA, and NORBORNE C. STONE, JR., as Co-Executors of this my Last Will and Testament and I do hereby expressly exempt my Executors of this Last Will and Testament from entering into a bond as such or from filing an inventory, hereby charging them with full power and complete management of my said estate, with power to sell and dispose of any real or personal property owned by me at the time of my death, whether for the purpose of paying debts or for the distribution of my estate, upon such terms and conditions as they shall see fit. And I do further expressly exempt my Executors from accounting to any court in which my estate might be pending for their actions as such, whether such accounting be partial or final.”
On petition of the Bates grandchildren, the administration of the estate was transferred to the Baldwin County Circuit Court on January 3, 1984. On March 7,1984, the trial court ordered Stone and Gomila to file an accounting and inventory of the estate. After the court considered numerous motions to vacate the sale of real property by the executors, to remove Stone and Gomila as executors, and to grant partial summary judgment, all of which were denied, the matter proceeded to trial.
The Bates grandchildren’s primary objection to the administration of the estate concerns the sale by Stone and Gomila of real property, specifically devised to the grandchildren, and known as the Cotton Bayou property, in order to pay alleged debts of the estate.
On August 12, 1982, the co-executors advised the plaintiffs, through their attorney, that the Cotton Bayou property would be sold to obtain funds to pay all of the estate’s debts and expenses. They indicated that the other real property, the Ro-mar Beach property, which was specifically devised to the deceased’s daughter, Ga-briella B. Ingalls, for life with remainder to her children or their descendants, would not be sold.
In a subsequent letter to plaintiffs’ counsel, dated November 11, 1982, Stone advised the plaintiffs that if they would like to receive the Cotton Bayou property, rather than have it sold to satisfy estate debts, they would have to give up their bequested residue and mortgage receivables under the will, totaling $8,766.66, and pay the estate $66,760.85. The specific devisees of the Romar Beach property were not asked to contribute toward the estate liability.
Over plaintiffs’ objections, on March 18, 1983, the co-executors sold the Cotton Bayou property to AMJ corporation for $85,-000. The co-executors did not receive bids, nor did they have the property appraised prior to its sale. Six months later, AMJ corporation sold the Cotton Bayou property for $115,000.00.
On June 2, 1986, the trial court entered a four-page decree ordering Stone and Gomi-la to pay the estate $30,000.00 plus interest at eight per cent per annum computed from the date of the sale of the real property specifically devised to the Bates grandchildren, the Cotton Bayou property. The court found that the sale was unnecessary; that the property was sold for a sum greatly disproportionate to its true value, that the sale constituted a gross abuse of discretion, and that it violated the trust imposed on the executors. Commissions on the sale and attorney fees for the contest of the petition were also disallowed.
*68 As to other actions taken by Stone and Gomila in administering the Bates estate, the trial court ordered:
(1) Payment to the estate by Gomila of lk of the value of a Buick LaSabre automobile, registered in the names of the deceased and Gomila, and reimbursement of insurance premiums paid on the car from funds of the estate.
(2) Reimbursement to the estate by Go-mila of $2,000.00 in executor’s fees with interest at eight per cent per annum since payment.
(3) Reimbursement to the estate by Go-mila and Stone for all payments made on accounts existing at the death of the decedent plus eight per cent per annum since payment, for which no claims were filed against the estate as required by law.
(4) Inclusion in the estate of $10,000.00 from decedent’s savings account.
On appeal, Stone and Gomila contend that the trial court erred in its rulings as to the Cotton Bayou property; payment of executor fees, commissions, and amounts on accounts existing at the death of the decedent; and the inclusion in the estate of $10,000.00 from an alleged joint savings account held by the deceased and Gomila.
Section 43-8-76 of the Code of Alabama mandates that unless the testator indicates otherwise, the assets of the estate are to be charged with the payment of estate debts, or abated, in the following order: 1) property not disposed of by the will; 2) residuary devises; 3) general devises; and 4) specific devises. Within each classification, abatement is to be in proportion to the value of the property each of the beneficiaries would have received had full distribution of the estate in accordance with the will been possible.
Particulary pertinent to this case is subsection (c) of § 43-8-76, Ala. Code (1975), which provides as follows:
“If the subject of a preferred devise is sold or used incident to administration, abatement shall be achieved by appropriate adjustments in, or contribution from, other interests in the remaining assets.”
Once determining the need to abate specifically devised property to pay estate debts, clearly, Stone and Gomila failed to follow the statute in charging only the plaintiffs’ specific devise of the Cotton Bayou property with that liability. The sale of the Cotton Bayou property should have been followed by proportionate adjustments to or contributions from all of the specific devises. The law requires that this be done.
The liability of an executor or administrator is limited to the amount of assets which come to his hands or which are lost, destroyed, wasted, injured, depreciated, or not collected because of his want of diligence or abuse of trust. Ala. Code (1975), § 43-2-110. We hold that Stone and Gomi-la’s actions in the sale of the Cotton Bayou property constituted a breach of the trust imposed on them as executors of the estate of Gabriella C. Bates. The executors’ failure to adhere to statutory procedure, as well as their failure to receive bids or have the Cotton Bayou property appraised prior to its sale, justifies the trial court’s order that the executors repay to the estate the difference between the amount received by the executors for the property and the appraised value thereof.
Stone and Gomila contend that due to the volatility of the real estate market, the trial court erred in measuring the value of the property lost to the estate at what it sold for six months later. The sale price was but one item of evidence of the value of the property. There was also evidence from experts which placed the value well above the amount fixed by the trial court. The value selected by the court fell within the range testified to by the experts at trial. Where, as here, the evidence was presented ore terms to the trial court, findings of fact that are supported by the evidence or any reasonable inference therefrom will not be disturbed on appeal, unless plainly and palpably erroneous. Eagerton v. Courtaulds North America, Inc., 421 So.2d 104 (Ala.1982).
We likewise find no error in the trial court’s disallowance of executors’ fees and commissions to Stone and Gomila. The *69 setting of executor’s fees and commissions is a matter entirely within the judicial discretion of the trial court. The language of Section 43-2-680, Ala. Code (1975), which allows for compensation to executors and administrators, is permissive, rather than mandatory.
“While it allows the court to set a reasonable compensation for the efforts of the administrator or executor, it does not require that such compensation be granted. The allowance is a matter of judicial determination, and what shall be allowed below or up to the maximum limit prescribed by that section is to be determined according to the circumstances of each particular case.”
Smith v. McNaughton, 378 So.2d 703, 704 (Ala.1979). Given the facts of this case, with its evidence of numerous breaches of trust by the executors, we cannot question the trial court’s decision to disallow them compensation.
The Alabama nonclaim statute, § 43-2-350, Code 1975, provides as follows:
“(a) All claims against the estate of a decedent, held by the personal representative of such decedent or by an assignee or transferee of such representative, or in which he has an interest, whether due or to become due, must be presented within six months after the grant of letters by filing the claims, or statement thereof, verified by affidavit, in the office of the judge of probate, in all respects as provided by section 43-2-352. All such claims not so presented and filed are forever barred, and the payment or allowance thereof is prohibited. But this subsection shall not apply to claims of executors or administrators to compensation for their services as such, nor to sums properly disbursed by them in the course of administration.”
The primary purpose of the statute of nonclaims is to prevent the “payment of unjust, unconscionable, or fraudulent claims that may be made against estates by personal representatives and other creditors, without giving notice to the parties in interest and affording them the opportunity to resist the demands.” Burgess v. Burgess, 201 Ala. 631, 79 So. 193 (1918).
In this case the trial court’s action in disallowing some claims is justified by the evidence.
Finally, Stone and Gomila contend that the trial court erred in determining that $10,000 in a joint savings account between the decedent and Gomila were funds belonging to the estate.
On July 9, 1979, the savings account in question was opened at the State Bank of the Gulf in the names of Gabriella C. Bates or Emily B. Gomila. Both parties signed the signature card, which indicated that it was for a joint savings account with surviv-orship provisions. Text on the signature card provided as follows:
“The signator(s) of this account hereby acknowledge that the depositor or depositors, both as to the original deposit and any subsequent deposits intend that such funds as may constitute any account balance upon the death of any party to this account, shall be the property of the surviving party or parties who shall take as a surviving joint tenant. If two or more persons shall be the survivors, their interests shall continue to be held as joint tenants with the right of survivorship. They also agree each with the other(s) and with you that all sums on deposit or hereafter deposited by either or any of the depositors shall be the property of the depositors jointly and upon receipt of a properly executed written order, payable to any of them. Each of the depositors hereby appoints the other or each of the others his attorney with power to deposit in said joint and several account monies belonging to him and for that purpose to endorse any check, draft, note, or other instrument payable to him and/or to cash the same. In case of death of one or more of the joint tenants) the surviving joint tenant(s) hereby agree(s) to notify the bank immediately of the death(s). Payment to or on receipt of the survivor(s) shall be subject to the laws relating to the inheritance and succession taxes and all rules and requisitions made pursuant thereto.”
*70 When the account was opened, § 5-1-25, Code 1975, was the governing statute, and it provided as follows:
“(a) When a deposit shall be made in any bank doing business in this state in the names of two persons payable to either of such persons, or payable to the survivor of them, the said deposit shall, upon the death of either of said persons, become the property of and be paid in accordance with its terms to the surviv- or, irrespective of whether or not the funds deposited were the property of only one of said persons, irrespective of whether or not at the time of the making of such deposit there was any intention on the part of the person making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons during their joint lives had the right to withdraw such deposit and irrespective of whether or not there was any delivery of any bank book, account book, savings account book or certificate of deposit by the person making such deposit to the other of such persons.
“(b) This section shall apply to certificates of deposit, as well as to savings accounts and checking accounts and shall also apply where a deposit is made in the names of more than two persons where there is a provision for survivorship.”
Section 5-1-25, Code 1975, has since been repealed and replaced by § 5-5A-41(a), Code 1975. However, as this Court held in a similar case, Jones v. Jones, 423 So.2d 205 (Ala.1982), the statute that must govern is the one that was in existence when the account was established.
In cases interpreting § 5-1-25, Code 1975, this Court has held that the statute was enacted to foreclose post-death inquiries into the ownership of funds in a joint savings account, absent allegations of fraud, duress, mistake, incompetency, or undue influence. Hines v. Carr, 372 So.2d 13 (Ala.1979); McEniry v. Coats, 333 So.2d 568 (Ala.1976). We have searched the record in the case at bar and have found no such allegations or proof that will support the trial court’s determination that the funds of the joint savings account belong to the estate. Accordingly, that part of the trial court’s order must be reversed.
The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.